United States Court of Appeals,

Fifth Circuit.

No. 96-10349

Summary Calendar.

Richard W. CLARK; Clark & Company, Inc.; and John Doe, Cecil Morgan, Plaintiffs-Appellants,

v.

Michael J. FITZGIBBONS, Individually and as Receiver for American Bonding Company; and American Bonding Company, in receivership, Defendants-Appellees.

Feb. 14, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

American Bonding Co. ("ABC") is an Arizona insurance company placed in receivership by order of the Arizona Superior Court. Appellants asserted various state law claims against ABC and the Arizona special deputy receiver, Michael J. FitzGibbons. The district court dismissed the action on two grounds. First, the district court gave full faith and credit to the receivership order of the Arizona court, which required all persons with claims against ABC to bring those claims before the receiver. Second, the district court deferred to the Arizona receivership proceeding under the abstention doctrine of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

Finding *Burford* abstention appropriate and appellants' full faith and credit argument unpersuasive, we affirm.

1

I.

The complaint states that Richard W. Clark is a Texas resident and an officer and director of Clark & Co., a Texas insurance agency. As a managing general insurance agent, Clark & Co. entered agreements in the early 1990s to administer insurance policies issued by two Texas insurance companies and reinsured by ABC. It is undisputed that at all relevant times, ABC was an Arizona corporation authorized to engage in the business of insurance in that state and properly subject to the regulatory oversight of the Arizona director of insurance. ABC also was authorized to write insurance policies in Texas as a "foreign insurance company." TEX. INS.CODE ANN. art. 21.43 (Vernon 1981 & Supp.1996). However, the policies at issue in this appeal were issued by the two Texas companies and not by ABC.[1] The insured under these policies were individual Texas residents.

The complaint alleges that in 1994, ABC fell behind in its alleged financial obligations to the Texas policyholders. The Arizona Department of Insurance assumed supervision of ABC and

---

[1] The Texas companies, State and County Mutual Fire Insurance Co. and Guaranty County Mutual Insurance Co., are classified as county mutual insurance companies under Chapter 17 of the Texas Insurance Code. Although county mutual companies are generally exempt from the insurance laws of Texas, see TEX. INS.CODE ANN. art. 17.22, they are nonetheless governed by state law and subject to the oversight of the Texas Board of Insurance Commissioners. *See, e.g.,* TEX. INS.CODE ANN. art. 17.18 (biennial examination). Appellants accuse ABC of using the county mutual companies as "fronts" to sell insurance in Texas, virtually unregulated. It is undisputed, however, that the Texas policies were written by the county mutual companies. ABC contends that it was not the *de facto* insurer of the Texas policyholders, inasmuch as it contracted only as reinsurer of the policies issued by the Texas companies.

appointed FitzGibbons as supervisor. FitzGibbons allegedly agreed to continue paying ABC's obligations in Texas, including claims due to individual policyholders and fees and commissions owed to Clark and the Clark agency. The complaint alleges that FitzGibbons breached these promises.

Insurance regulators in Arizona and California, observing ABC's slide toward insolvency, took action in early 1995. The Arizona director of insurance initiated legal proceedings against ABC in an effort to rehabilitate the company and safeguard the rights of its creditors. On February 2, 1995, the Arizona Superior Court placed ABC in receivership and appointed the state director of insurance as receiver. The court named FitzGibbons special deputy receiver and ordered that all claims against ABC must be filed with him. The state court asserted its exclusive jurisdiction over ABC's property and assets.

Notwithstanding the state court injunction, appellants filed suit against ABC and FitzGibbons in United States District Court for the Northern District of Texas on August 11, 1995. The complaint asserted claims for breach of contract, indemnification, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. The action was framed in part as a putative class action, with Richard Clark as named plaintiff representing the interests of various John Doe plaintiffs, the individuals insured through the Clark agency whose policies were reinsured by ABC. The plaintiffs variously sought compensatory damages, exemplary damages, and an injunction to prevent ABC from "[m]isappropriating

3

or using funds which should lawfully be applied to pay for the claims incurred and damages sustained by the Doe plaintiffs."

Plaintiffs appeal the dismissal of the action.

## II.

Jurisdiction in the district court was premised upon diversity of citizenship. 28 U.S.C. § 1332. We have jurisdiction to review the district court's final order of dismissal. 28 U.S.C. § 1291.

## III.

We review a district court's decision to abstain for abuse of discretion, taking care to ensure that the decision fits "within the narrow and specific limits prescribed by the particular abstention doctrine involved." *American Bank and Trust Co. of Opelousas v. Dent,* 982 F.2d 917, 922 n. 6 (5th Cir.1993) (internal citation and quotation marks omitted).

## IV.

The *Burford* doctrine provides for abstention in deference to complex state administrative procedures. Insurance companies are ineligible for the protections afforded by the federal Bankruptcy Code. 11 U.S.C. § 109. Instead, insolvent insurers are subject to the comprehensive oversight of state administrative agencies and courts. *See, e.g.,* ARIZ.REV.STAT. ANN. § 20-611 *et seq.* Federal law consigns to the states the primary responsibility for regulating the insurance industry. *See* 15 U.S.C. § 1011-15 (McCarran-Ferguson Act); *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of America, Inc.,* 961 F.2d 529, 531 (5th Cir.1992).

Against this backdrop, allowing a creditor or claimant to

4

proceed against an insolvent insurer in federal court while a state insolvency proceeding is pending would "usurp [the state's] control over the liquidation proceeding by allowing [the claimant] to preempt others in the distribution of [the insurance company's] assets." *Barnhardt,* 961 F.2d at 532. This not only would violate the policy of the McCarran-Ferguson Act, but also would undermine "the comity rationale promoted by the *Burford* doctrine." *Id.*

In the instant case, permitting the Texas plaintiffs to proceed in federal court would undermine the comprehensive apparatus established by the state of Arizona for the orderly disposition of claims against insolvent insurance companies. Appellants seek to leapfrog ahead of all other claimants, who are bound to bring their claims before the Arizona receiver. Of course, as the district court recognized, permitting these plaintiffs to proceed in federal court in Texas would start a race to the courthouse in any jurisdiction where claims against ABC might have arisen. The administrative structure established by Arizona to rehabilitate or liquidate insolvent insurers would swiftly crumble.

Appellants nonetheless argue that abstention is inappropriate. They rely primarily on *New Orleans Public Service, Inc. v. Council of New Orleans [NOPSI],* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), which in their view "severely curtailed the reach of *Burford* abstention." *NOPSI* explained that under the *Burford* doctrine:

> Where timely and adequate state-court review is available, a
> federal court sitting in equity must decline to interfere with

the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976)).

Appellants' argument overlooks the importance of a coherent state policy to manage insolvent insurance companies. Arizona has established a system in which a state regulatory investigation of an insolvent insurer may culminate in the appointment of a receiver for the rehabilitation of the company, the orderly processing of claims against it, and, if necessary, its liquidation. Allowing appellants to proceed in a separate federal court action would defy common sense, as well as notions of comity and the national policy embodied in the McCarran-Ferguson Act.

More to the point, appellants overlook the post-*NOPSI* decisions of this court in *Barnhardt* and *Martin Ins. Agency, Inc., v. Prudential Reinsurance Co.,* 910 F.2d 249 (5th Cir.1990). These precedents establish that in this circuit, *NOPSI* has not abrogated the rule favoring abstention in deference to state insurance insolvency or liquidation proceedings. *See also Hartford Casualty Ins. Co. v. Borg-Warner* Corp., 913 F.2d 419 (7th Cir.1990); *but see Fragoso v. Lopez,* 991 F.2d 878 (1st Cir.1993).

In *Martin,* the plaintiff, a Louisiana insurance agency, paid claims that were owed to its clients by Transit Casualty Co., an

6

insolvent Missouri insurance company. To recover the money paid out to the policyholders, Martin filed suit in Louisiana state court against Transit's reinsurers. The district court granted the defendant reinsurers' removal motion and dismissed the action. We affirmed in deference to Transit's ongoing Missouri insolvency proceedings. As we explained, under *Burford,*

> A federal court should abstain from exercising jurisdiction where to do so would interfere with a specialized, unified state court system of adjudication designed to avoid inconsistent adjudication of claims arising from a comprehensive, detailed, and complex regulatory scheme in a subject area involving state law.

*Martin,* 910 F.2d at 254. We held dismissal appropriate in light of Missouri's comprehensive regulatory oversight of insolvent insurance companies. *Id.* at 255.

Similarly, in *Barnhardt,* we concluded that the district court had appropriately stayed the case in deference to ongoing state proceedings. Barnhardt, an insurance broker, sought to recover premiums from an insurance company that was the subject of liquidation proceedings in Louisiana. Relying on *NOPSI* 's articulation of the *Burford* doctrine, we held,

> Louisiana's insurance laws provide a comprehensive framework for the liquidation of insolvent insurance companies and the resolution of claims against them. *Burford*-type abstention is appropriate in an action against an insurance company which is the subject of a Louisiana liquidation proceeding.

*Barnhardt,* 961 F.2d at 531 (internal citations omitted). The same necessarily holds true in this case, since Arizona, like Louisiana, has adopted the Uniform Insurers Liquidation Act. *See generally* ARIZ.REV.STAT. ANN. 20-611 *et seq.*

In sum, the regulatory regime adopted and enforced by the

7

state of Arizona provides for the orderly and fair resolution of claims against an insolvent insurer. Arizona requires that all such claims be brought before the receiver, thus avoiding the likelihood of "inconsistent adjudication" in various jurisdictions. *Cf. Martin,* 910 F.2d at 254. The district court did not abuse its discretion by electing to abstain in these circumstances.

V.

Appellants argue additionally that the district court erred by extending full faith and credit to the Arizona court's receivership order. *See* U.S. CONST. art. IV, § 1; 28 U.S.C. § 1738. This claim rests in part on the premise that "Arizona does not have an interest in this litigation." The premise is clearly untenable, since a federal court judgment against ABC inevitably would destabilize Arizona's efforts to manage ABC's insolvency.

Appellants also assert that their contracts with ABC include choice of law and forum selection provisions favoring resolution of the instant case in Texas and under Texas law. They claim that these clauses militate against extending full faith and credit to the Arizona receivership court's orders. However, the question whether to exercise jurisdiction is antecedent to the choice of law and choice of forum questions. Having found abstention appropriate, we defer to the Arizona state courts to apply the law correctly.

Finally, appellants argue that extending full faith and credit to the Arizona court violates their constitutional right to due process of law. U.S. CONST. amend. XIV. They argue that

8

closing the federal courthouse door in Texas would compel them to seek relief in Arizona, where they lack the "minimum contacts" necessary to satisfy due process. *Cf. Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

This argument, though creative, is without merit. The minimum contacts standard protects defendants, not plaintiffs. If a plaintiff is unwilling to submit to the jurisdiction of the Arizona Superior Court, he need not bring a claim there. As Justice Cardozo remarked in a different context, "The timorous may stay at home." *Murphy v. Steeplechase Amusement Co.,* 250 N.Y. 479, 166 N.E. 173 (1929).

The order of the district court dismissing the action in deference to the Arizona state court proceedings is AFFIRMED.