JERRY E. SMITH, Circuit Judge:
B.C. Rogers Poultry, Inc., and B.C. Rogers Processors, Inc. (collectively, “B.C.Rogers”), appeal a remand to state court ordered pursuant to the Burford abstention doctrine. Concluding that the court acted without the doctrine’s strictures as defined by the Supreme Court, we reverse.
I.
The State of Texas brought Employers National Insurance Company (“ENIC”), an insurance company regulated under Texas law, into state court, where it was declared insolvent and placed in receivership. Pursuant to the Texas Insurance Code, the state obtained a permanent injunction and order, appointing Jack Webb as Special Deputy Receiver (“SDR”) for ENIC and enjoining any person from interfering with the state receivership court proceedings or the lawful acts of the SDR and from taking any action involving the SDR outside of the state receivership court.
Webb, carrying out his duties as SDR, brought suit in state court against B.C. Rogers, as ENIC policyholders, to collect assets — -unpaid workers’ compensation premiums — allegedly belonging to ENIC. Webb asserts three alternative causes of action: (1) breach of contract, (2) quantum, meruit, and (3) suit on sworn account. He seeks $674,335 in damages, plus interest and attorney’s fees.
B.C. Rogers removed to federal court pursuant to 28 U.S.C. § 1441, alleging original jurisdiction based on diversity of citizenship. See 28 U.S.C. § 1332. Webb sought remand, advancing three grounds: (1)B.C. Rogers had failed to comply with the removal statute, (2) the permanent injunction enjoined B.C. Rogers from litigating the dispute in a forum other than the receivership court, and (3) under the Burford abstention doctrine, the district court should refrain from exercising jurisdiction.[1] The district court summarily rejected the first two bases but elected Bur-ford abstention and remanded, holding that
[ajbstention is appropriate in this case, for if this Court were to exercise federal jurisdiction, it could well interfere with the State of Texas’ efforts to effect a coherent policy on a matter of public concern, that is, the collection of assets of an insolvent insurer through a state district court receivership proceeding wherein the state district court retains continuing jurisdiction over the liquidation proceedings.
II.
We always must be certain that our limited jurisdiction encompasses the appeal before us. See Castaneda v. Falcon, 166 F.3d 799, 801 (5th Cir.1999); Jones v. Collins, 132 F.3d 1048, 1051 (5th Cir.1998). We sua sponte requested briefing on the issue and now clarify our jurisdiction.
The order abstaining under Bur-ford and remanding is a final order disposing of all issues. We have jurisdiction, therefore, pursuant to 28 U.S.C. § 1291. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 715, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); Munich Am. Reinsurance Co. v. Crawford, 141 F.3d 585, 589 (5th Cir.1998), cert. denied, — U.S. -, 119 S.Ct. 539, 142 L.Ed.2d 448 (1998).
In 28 U.S.C. § 1334(d), Congress has denied us jurisdiction over an appeal from a decision to abstain under § 1334(c) *700 (allowing abstention, in the interest of comity or respect for state law, from state law causes of action arising under, or related to, title 11). Here, the receivership proceedings in state court arose under the Texas Insurance Code, not the Bankruptcy Code. See Clark v. Fitzgibbons, 105 F.3d 1049, 1051 (5th Cir.1997) (“Insurance companies are ineligible for the protections afforded by the federal Bankruptcy Code. 11 U.S.C. § 109.”). The district court, therefore, did not exercise jurisdiction over the removed action under 28 U.S.C. § 1452(a) (providing for removal of any action over which the court has jurisdiction under 28 U.S.C. § 1334) and 28 U.S.C. § 1334(b) (providing for original jurisdiction in the district courts “of all civil proceedings arising under title 11, or arising in or related to cases under title 11.”). Rather, it based its jurisdiction on diversity of citizenship, found in 28 U.S.C. § 1332. The court’s decision to abstain, then, did not fall within 28 U.S.C. § 1334(c), so § 1334(d) is inapposite.
Similarly, in 28 U.S.C. § 1447(d), Congress denied us jurisdiction over remands pursuant to 28 U.S.C. § 1447(c), which requires a district court to remand if it lacks subject matter jurisdiction or if the removal was defective; conversely, § 1447(d) does not preclude review of remands on other grounds.[2] Neither party argues that the district court lacked subject, matter jurisdiction. Rather, they dispute whether the court abused its discretion in abstaining from exercising its jurisdiction. Section 1447(d), therefore, is also inapposite, and we have jurisdiction to consider the appeal.
III.
The Burford doctrine allows a federal court to abstain from exercising its jurisdiction in deference to complex state administrative procedures. The Supreme Court has described the Burford doctrine as follows:
Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are “difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar”; or (2) where the “exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.”
New Orleans Pub. Serv., Inc. v. Council of New Orleans (“NOPSI”), 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).[3] Essentially, Burford instructs a district court to weigh the federal interests in retaining jurisdiction over the dispute against the state’s interests in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter. See Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712; NOPSI, 491 U.S. at 363, 109 S.Ct. 2506; Burford, 319 U.S. at 334, 63 S.Ct. 1098. But this “balance only rarely favors abstention.” Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712. Typically, “federal courts have a virtually unflagging obligation ... to exercise the jurisdiction giv *701 en them.” Colorado River, 424 U.S. at 821, 96 S.Ct. 1236 (quotation omitted). •
In Quackenbush, the Court determined that an action seeking damages never warrants abstention. The Court examined the foundation and history of abstention doctrines, and Burford abstention in particular, finding that the power to abstain originated in “the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief.” Quackenbush, 517 U.S. at 730, 116 S.Ct. 1712. The Court disagreed with the Ninth Circuit’s limitation of abstention to equitable cases, instead extending the doctrine “to all cases in which a federal court is asked to provide some form of discretionary relief.” Id.[4] A damages action, however, allows the court no discretion and may not be remanded. Id. at 731, 116 S.Ct. 1712.[5]
A.
We review an abstention for abuse of discretion. See Clark, 105 F.3d at 1051; see also Burford, 319 U.S. at 318, 63 S.Ct. 1098 (describing court’s choice of whether to abstain as a matter of discretion). The exercise of discretion must “fit[ ] within the narrow and specific limits prescribed by the particular abstention doctrine involved.” Clark, 105 F.3d at 1051 (quotation omitted). A court necessarily abuses its discretion when it abstains outside of the doctrine’s strictures.
B.
B.C. Rogers presents a simple argument for reversal: Under Quackenbush, a court may not remand pursuant to Burford abstention if the plaintiff seeks damages. Webb seeks damages, so a Burford abstention remand is not permitted.
Webb counters with three ultimately unsuccessful arguments. First, he cites precedent no longer applicable after Quackenbush and argues to support an exercise of discretion where no discretion exists. He next incorrectly avers that the Quackenbush rule on which B.C. Rogers relies is not ironclad. He finally contends that, because one of his causes of action sounds in the equitable doctrine of quantum meruit, Burford abstention is appropriate within Quackenbush’s limitations.[6] We conclude that, because Quackenbush denies the legal authority to remand, the district court abused its discretion.
1.
Webb vigorously argues that the usual Burford considerations support remand. The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, assigns primary responsibility for regulating the insurance industry to the states. Texas has enacted an extensive regulatory scheme for dealing with insolvent insurers and has an interest in applying its law to marshal efficiently all the assets of such insurers in . a uniform manner. Webb contends that the federal government, on the other hand, has a “complete absence” of interest in this dis *702 pute. The causes of action sound solely in state law; no federal statutes or interests are involved.
Webb buttresses this argument by citing several of our decisions in which we have affirmed abstention and have mentioned the strong interests states have in addressing insolvent insurers.[7] But these cases indicate only that we probably would find the remand to be within the court’s discretion if it had acted within the bounds of the Burford doctrine.[8] The analysis ignores B.C. Rogers’s argument that the district court had no discretion.
Relatedly, Webb overlooks that these cited cases precede Quackenbush and the limits it imposed on abstention.[9] As we explained in Munich American, we previously had approved abstention remands in cases related to insolvent insurers involved in state proceedings; but this changed with Quackenbush’s prohibition on remanding damages action. See Munich American, 141 F.3d at 589. Now a court may abstain “only when the district court has discretion to grant or deny relief.” Id. Accordingly, we found that the court abused its discretion by invoking Burford, because it had no discretion in the relief sought. Id. at 590.[10]
Webb’s argument and the cited precedent would provide a sound basis for affirming the district court’s application of the Burford doctrine if it were within its discretion. Because, however, we find that the nature of Webb’s claims precludes Burford abstention, we do not reach whether the Burford doctrine otherwise favors abstention on these facts.
2.
Webb’s contention that Quackenbush does not impose an ironclad, per se bar to remanding damages action lacks merit. Webb quotes a passage[11] from a section in which the Court explained the roots and *703 purpose of abstention. See Quackenbush, 517 U.S. at 727-28, 116 S.Ct. 1712. It also noted that prior caselaw does “not provide a formulaic test for determining when dismissal [or remand] under Burford is appropriate.” Id. at 727, 116 S.Ct. 1712. But the Court had not even begun its application of these general principles to the case before it. When it did reach its holding, it left no exceptions: abstention is appropriate “only where the relief being sought is equitable or otherwise discretionary.” Id. at 731, 116 S.Ct. 1712 (emphasis added).[12]
3.
Webb makes the superficially appealing argument that the “equitable nature” of quantum meruit brings the case within Quackenbush and allows for remand. “Quantum meruit is an equitable doctrine based on the principle that one who benefits from another’s labor and materials should not be unjustly enriched thereby.” SMP Sales Management, Inc. v. Fleet Credit Corp., 960 F.2d 557, 560 n. 3 (5th Cir.1992). Texas courts also have noted the equitable nature of quantum meruit.[13] Because the case includes this claim for equitable relief, the argument goes, it falls within Quackenbush and may be remanded.
a.
Webb reads Quackenbush too simply and fails to comprehend the complexity of quantum meruit. For Burford to apply, a federal court must be sitting in equity with the discretion to deny relief. See Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712 (explaining that the power to abstain “derives from the discretion historically exercised by courts of equity.”). As part of the Court’s formulation of when abstention doctrines apply, the court must be sitting in equity.[14]
*704 In Quackenbush, the Court emphasized a court of equity’s discretion to grant or deny relief, holding that abstention based remands or dismissals are appropriate “only where the relief being sought is equitable or otherwise discretionary.” Quackenbush, 517 U.S. at 731, 116 S.Ct. 1712.[15] The source of the power to abstain confirms the centrality of the court’s sitting in equity and hence possessing discretion in the relief afforded. See Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712. That discretion allows it to deny relief; the abstention doctrines merely add that “the exercise of this discretion must reflect principles of federalism and comity.” Id. When a court considers these factors, balancing state and federal interests, discretion may favor withholding relief by way of abstention-based remand or dismissal.[16]
This withholding of extraordinary relief by courts having authority to give it is not a denial of the jurisdiction which Congress has conferred on the federal courts.... On the contrary, it is but a recognition ... that a federal court of equity ... should stay its hand in the public interest when it reasonably appears that private interests will not suffer .... It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states.
Alabama Pub. Serv. Comm’n v. Southern R.R., 341 U.S. 341, 350-51, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).
b.
When a court hears a claim for quantum meruit, it neither sits in equity nor possesses discretion. Courts frequently refer to quantum meruit as an equitable doctrine and even as seeking equitable relief. Despite its equitable nature, however, quantum meruit is an action at law — a legal cause of action seeking money damages. Indeed, courts recognize that they do not sit in equity when they hear a quantum meruit claim,[17] and they recog *705 nize that a division between equity and law places quantum meruit on the law side.[18]
Furthermore, in a quantum meruit action, the court lacks discretion to balance interests between the state and federal governments. Relief turns not on a weighing of the equities but on a straightforward application of law to facts. If the facts justify relief under the legal standard — a question often answered by jury — the court has no discretion to weigh the equities and decide against relief.[19]
Sitting at law, without discretion to deny relief, a court cannot remand a quantum meruit claim under Quackenbush. The state’s interests must yield to the federal court’s “strict duty to exercise the jurisdiction that is conferred upon [it] by Congress.” Quackenbush, 517 U.S. at 716, 116 S.Ct. 1712. Because the district court lacked discretion to remand these damages actions, we REVERSE and REMAND for further proceedings consistent with this opinion.

. See Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

. See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127, 116 S.Ct 494, 133 L.Ed.2d 461 (1995); Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 345-52, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); see also, e.g., Angelides v. Baylor College of Med., 117 F.3d 833, 835-36 (5th Cir.1997); Soley v. First Nat’l Bank of Commerce, 923 F.2d 406, 407-08 (5th Cir.1991). Our inability to review a § 1447(c) remand obtains even if the order was erroneous. See Thermtron, 423 U.S. at 351, 96 S.Ct. 584; Angelides, 117 F.3d at 836.

. See also Baran v. Port of Beaumont Navigation Dist., 57 F.3d 436, 441 (5th Cir.1995).

. See also Quackenbush, 517 U.S. at 718, 116 S.Ct. 1712 (recognizing that "the authority of a court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief.”).

. See id. at 731, 116 S.Ct. 1712 ("[FJederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Because this was a damages action, we conclude that the District Court’s remand was an unwarranted application of the Burford doctrine.”). Although remanding a damages case is inappropriate, the Court noted that a court could stay an action pending resolution in state court of an issue relevant to the federal case if the Burford doctrine called for abstention. Id.

. This argument relies on two premises: (1) A quantum meruit claim falls within the set of cases from which the Supreme Court has found a district court may abstain, and (2) a court may abstain and remand an entire case, including damages actions, so long as one cause of action falls within that set Quacken-bush approved. Because we reject the first premise, we do not reach the second.

. See, e.g., Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc., 961 F.2d 529, 531-32 n. 4 (5th Cir.1992) (affirming remand and noting near unanimity among the circuit courts that Burford abstention is appropriate in cases related to a state's administration of an insolvent insurer); Martin Ins. Agency, Inc. v. Prudential Reinsurance Co., 910 F.2d 249 (5th Cir.1990).

. This is true even though Webb overstates his case in declaring the “complete absence” of federal interest. The district court assumed removal jurisdiction based on diversity pursuant to 28 U.S.C. § 1332. The Constitution, in Art. Ill, § 2, allows for federal court jurisdiction in cases and controversies "between Citizens of different States.” When Congress first created lower federal courts in the Judiciary Act of 1789, Act of Sept. 24, 1789, 1 Stat. 73, it included diversity jurisdiction as one basis for original federal court jurisdiction — a basis that has survived since. The presupposition for diversity jurisdiction is to provide diverse parties with a federal forum' in which an out-of-state party might escape local bias. See, e.g., Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 546 n. 6, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (noting this purpose). By this grant of jurisdiction, Congress has expressed a federal interest in administering impartial justice to diverse parties.

. Webb cites one case, Clark, in which we affirmed an abstention remand in an insurance case post-Quackenbush. See Clark, 105 F.3d at 1052. Clark does not control our outcome, because we did not confront the issue we face here. We did not discuss whether the damages sought precluded remand under Quackenbush and, indeed, we did not cite Quackenbush.

. Webb attempts to distinguish Munich American by comparing the alleged lack of federal interest here to the federal interest in the Federal Arbitration Act ("FAA”) on which the Munich American plaintiffs relied. But our discussion of the FAA focused on the lack of discretion in the relief sought, which bars a remand; we did not reference, even in passing, a federal interest.

. “Ultimately, what is at slake is a federal court’s decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action,' that the State’s interests are paramount and that a dispute would best be adjudicated in a state forum.” Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712 (internal citation omitted).

. See also id. at 730, 116 S.Ct. 1712 (noting that staying a damages action is permissible, "but we have not permitted [courts] to dismiss the action altogether”). Webb also resourcefully quotes a decision interpreting Quackenbush to mean "that abstention, under Burford or otherwise, may be appropriate in suits for damages.” See DeMauro v. DeMauro, 115 F.3d 94, 98 (1st Cir.1997). Although true, this lends no support to Webb's position. The court further explained that a "district court may only order a stay pending resolution of state proceedings; it cannot invoke abstention to dismiss the suit altogether.” Id. Here, the court did not stay the action; it remanded, the functional equivalent of dismissal in this context.

. See, e.g., Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex.1992) ("Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received.”); Vortt Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex.1990) ("Quantum meru-it is an equitable remedy which does not arise out of a contract, but is independent of it.”); see also, e.g., Brankline v. Capuano, 656 So.2d 1, 5 (La.App. 3d Cir.1995) ("Quantum meruit is an equitable remedy founded upon the principle that no one who benefits from the labor or materials of another should be unjustly enriched at the other's expense.”); McGee v. McGee, 277 N.J.Super. 1, 648 A.2d 1128, 1133 (1994) (describing "equitable remedies such as ... quantum meruit,” "invoca-ble for equitable reasons”); Feingold v. Pucello, 439 Pa.Super. 509, 654 A.2d 1093, 1094 (1995) ("Quantum meruit is an equitable remedy.”); Castelli v. Lien, 910 S.W.2d 420, 428 (Tenn.Ct.App.1995) ("quantum meruit is an equitable remedy” available if tire contract is no longer enforceable); Po River Water & Sewer Co. v. Indian Acres Club, Inc., 255 Va. 108, 495 S.E.2d 478, 482 (1998) (describing relief under quantum meruit theory as equitable); Bowles v. Sunrise Home Ctr., Inc., 847 P.2d 1002, 1004 (Wyo.1993) ("Unjust enrichment (or quantum meruit) is an equitable remedy which implies a contract”).

. See Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712; id. at 717, 116 S.Ct. 1712 ("[I]t has long been established that a federal court has the authority to decline to exercise jurisdiction when it 'is asked to employ its historic powers as a court of equity.’ ”) (quoting Fair Assessment in Real Estate Ass’n, Inc. v. McNary, 454 U.S. 100, 120, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (Brennan, J., concurring)); NOPSI, 491 U.S. at 361, 109 S.Ct. 2506 (explaining that in certain circumstances "a federal court sitLing in equity must decline to interfere with the proceedings or orders of state administrative agencies”); see also Tribune Co. v. Abiola, 66 F.3d 12, 16 (2d Cir.1995) ("We find it significant that the *704 Supreme Court [in NOPSI ] traced the origin of abstention doctrines to the federal court's discretion to withhold equitable relief, and reformulated the Burford doctrine to require federal courts ‘sitting in equity' to abstain from exercising their jurisdiction in certain circumstances.” (citation omitted)); id. at 15-16 (“When a federal court sits in equity[,]” abstention may be warranted).

. The use of "or otherwise” rather than simply "or discretionary” in "equitable or otherwise discretionaiy” implies that the Court assumed that the equitable relief to which it referred also was discretionary. See also Quackenbush, 517 U.S. at 730, 116 S.Ct. 1712 (holding abstention extends "to all cases in which a federal court is asked to provide some form of discretionaiy relief"); Munich Am., 141 F.3d at 589 ("Burford abstention is permissible only when the district court has discretion to grant or deny relief.”).

. The higher degree of interference with state proceedings that injunctive or declaratory relief imposes, as opposed to a damages award, also favors allowing abstention when a court sits in equity, but not in an action at law. See Quackenbush, 517 U.S. at 717-18, 116 S.Ct. 1712 ("The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction.... Few public interest have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies [by means of abstention]....”); Tribune Co., 66 F.3d at 16 (holding that abstention is available only when the court sits in equity, because "[injunctions are the most intrusive sort of judicial relief, and may directly interfere with the proceedings or orders of state administrative agencies.” (quotation omitted)).

. See American Nat'l Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161, 1165 (1938) (holding that, although "courts of equity will not enforce” the statute of frauds if doing so would work a fraud, specific performance will not be granted for land contract barred by statute of frauds, "since the value of the consideration may be recovered in an action at law on a quantum meruit.”); Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147, 150 (1937) (same); Richardson v. Iley, 299 S.W.2d 187, 188 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.) (same); see also, e.g., Tompkins v. Hoge, 114 Cal.App.2d 257, 250 P.2d 174, 178 (1952) (denying equitable relief of specific performance because, the services being compensable "in quantum meruit, the *705 remedy at law is adequate”); Frontier Properties Corp. v. Swanberg, 488 N.W.2d 146, 147 (Iowa 1992) C'[A]ctions for amounts due under a contract or for quantum meruit recovery based on implied contract are actions at law.”); Campbell v. Welsh, 54 Md.App. 614, 460 A.2d 76, 82 (1983) (referencing cases that permit "recovery at law, on a quantum meru-it basis”); Van Horn v. DeMarest, 76 N.J. Eq. 386, 77 A. 354, 367-68 (1910) (referring to "an action at law upon a quantum meruit”); Ogletree, Deakins, Nash, Smoak & Stewart P.C. v. Albany Steel Inc., 243 A.D.2d 877, 663 N.Y.S.2d 313, 315 (1997) (rejecting categorization of claim as equitable because a “quantum meruit action is essentially an action at law, inasmuch as it seeks money damages in the nature of a breach of contract, notwithstanding that the rationale underlying such causes of action is fairness and equitable principles in a general rather than legal sense.”) (quotation omitted); Cordrey v. Cordrey, 579 P.2d 209, 213 (Okla.App. Div. 2 1978) (describing quantum meruit action as "one at law and not equity”); Welch v. Webb, 47 Or. App. 771, 615 P.2d 391, 393 n. 3 (1980) ("This case, brought as a suit in equity, has become an action at law for quantum meru-it.”); Tri State Home Improvement Co. v. Mansavage, 77 Wis.2d 648, 253 N.W.2d 474, 479 (1977) ("A cause of action for quantum meru-it, while equitable in nature, is an action at law” usually heard by jury, and not by court sitting in equity).

. See, e.g., Allen v. Peachtree Airport Park Joint Venture, 231 Ga.App. 549, 499 S.E.2d 690, 691 (1998) (rejecting argument that district court lacked jurisdiction "to determine equitable issues such as quantum meruit” because "state courts have subject matter jurisdiction of quantum meruit claims, which are considered actions at law”); Ordon v. Johnson, 346 Mich. 38, 77 N.W.2d 377, 383 (1956) (affirming transfer of cause by chancery judge to law side to allow hearing on quantum meruit claim); Craig v. Jo B. Gardner, Inc., 586 S.W.2d 316, 325 (Mo.1979) (holding court of equity could hear quantum meruit claim, "a suit at law,” but only because equity court already had "rightful possession” of case because of equitable claim); Galloway v. Eichells, 1 N.J.Super. 584, 62 A.2d 499, 502 (1948) (transferring action to Law Division because only possible relief would be damages "at law upon quantum meruit”); Turcott v. Gilbane Bldg. Co., 94 R.I. 225, 179 A.2d 491, 493 (1962) (holding that quantum meruit action, "a remedy at law,” must be brought "in an action at law” and not in a court of equity); Lanmor Corp. v. B M & K Builders, Inc., 1990 WL 751279, *3, 1990 Va. Cir. LEXIS 443, at *7 (Va.Cir.Ct. Sept. 10, 1990) (denying leave to amend bill of equity to add quantum meruit, which "involves legal principles cognizable at law, not in equity,” because sustaining demurrer on equitable claims left no basis for equitable jurisdiction).

. Cf. Knebel v. Capital Nat’l Bank, 505 S.W.2d 628, 631 (Tex.Civ.App.—Austin 1974) (describing the “equitable concept” of unjust enrichment, "enforced through the common law courts as Quantum meruit,” which “obligated the common law courts” to enforce certain implied promises) (emphasis added), aff d in pari and rev’d in part on other grounds, 518 S.W.2d 795 (Tex.1974).