# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-IA-01633-SCT

*RHONDA LOPEZ DROUET POOLE*

*v.*

*GWIN, LEWIS & PUNCHES, LLP, A PARTNERSHIP*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/10/1999 |
| TRIAL JUDGE: | HON. GEORGE WARD |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ALEX A. ALSTON, JR. |
| | RICHARD L. JONES |
| ATTORNEY FOR APPELLEE: | WILLIAM C. GRIFFIN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED- 08/30/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/20/2001 |

**BEFORE BANKS, P.J., WALLER AND COBB, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. We granted this interlocutory appeal under M.R.A.P. 5 to review an order denying transfer from chancery court to circuit court of a civil action filed by Gwin, Lewis & Punches, LLP (the Gwin firm), a law firm in Natchez, Mississippi, seeking recovery of attorneys' fees from its former client Rhonda Lopez Drouet Poole. The Gwin firm performed services under a contingent fee arrangement to protect Poole's interest in her husband's estate. The Gwin firm contends that Poole fired it after it had performed most of the work to settle, to Poole's benefit, the dispute, but before Poole actually received any assets from the estate. Poole filed a motion to transfer to the circuit court, claiming that the Gwin firm sought damages for a breach of a contract of employment, for which she was entitled to a trial by jury. The chancellor found that the suit was not one for damages and denied the motion. Because the relief sought by the law firm is equitable in nature, we affirm the chancellor's denial of Poole's motion to transfer and remand this case for further proceedings.

## FACTS

¶2. Poole was engaged to be a "sitter" for Joseph M. Drouet, Jr., and his wife. After Mrs. Drouet died, Drouet, who was around 76 years of age, and Poole, who was around 36 years of age, became romantically involved. When Drouet and Poole began discussing marriage, Poole hired the Gwin firm to draft a pre-nuptial agreement. Before the agreement was signed, however, Drouet and Poole eloped. At this point, the Drouet family threatened to have the marriage annulled and to contest any will Drouet might make. The Gwin firm agreed to perform legal work to ensure that Poole would share in Drouet's estate, which was valued at over three million dollars.

¶3. Poole entered into a contract of employment/contingent fee agreement with the Gwin firm. This contract

was later modified to lower the percentage of the contingency fee from 33 1/3% to 20%, if the dispute was settled prior to going to trial. As a result of the negotiations by the Gwin firm, Poole and the Drouet family entered into an agreement whereby Poole "became contractually entitled to absolutely recover substantial sums of money and real property" from her husband's estate. The settlement agreement was not included in the record, though there is a reference to Poole being entitled to more than one million dollars of property from the estate. Drouet died less than a month after the date of the settlement. Within the next year, Poole remarried and was committed to the Mississippi State Hospital at Whitfield. A conservatorship has been established to protect her estate.

¶4. The Gwin firm contends that Poole never paid to them the 20% she was obligated to pay under the employment contract. It filed a complaint for declaratory judgment against Poole in the Chancery Court of Wilkinson County, where Poole resided. The complaint was later amended to add claims for an accounting and a partition of the Wilkinson County land and personalty owned by Poole.

¶5. Poole responded to the complaint by filing an answer and a motion to transfer the case to the Circuit Court of Wilkinson County, contending that the cause of action raised in the complaint was for specific performance or a suit for money damages arising from a breach of contract. She later amended the answer to ask the court to void the contract on the bases that she signed it when she was under duress and that it was unconscionable because of the unreasonable contingency fee and because the law firm breached its fiduciary duty to her. She also added a counterclaim that the law firm induced her to sign the contract on false pretenses, telling her that Drouet's family would contest the will, when, in fact, they had no plans to do so. Poole finally contended that her constitutional right to a jury trial would be violated if the chancery court retained jurisdiction over the lawsuit.

¶6. The chancellor denied Poole's motion to transfer, finding that the law firm was "seeking to recover a contingency fee under an employment contract" and that the matter was "not a suit for damages."

## STANDARD OF REVIEW

¶7. The Court may reverse the chancery court only if it finds that the chancellor abused his discretion in denying the motion to transfer. ***Robertson v. Evans***, 400 So. 2d 1214, 1215 (Miss. 1981).

## ANALYSIS

¶8. The issue presented to the Court is whether the chancellor committed a clear abuse of discretion in concluding this action was one whose subject matter falls within the jurisdiction of the chancery court. The issue will be addressed as two separate issues which we find dispositive.

### I. WHETHER THE GWIN FIRM'S SUIT FOR BREACH OF A CONTINGENT FEE CONTRACT IS A SUIT AT LAW, TO WHICH POOLE IS ENTITLED TO TRIAL BY JURY.

¶9. We disagree with Poole's characterization of the law firm's claim as being one for "breach of contract." It is a settled rule that because of the special relationship of trust and confidence between attorney and client, the client may terminate the relationship at any time, with or without cause. 7A C.J.S. *Attorney and Client* § 220, at 387-90 (1980). A client's discharge of his attorney is not a breach of contract because "it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate the contract at will." ***Fracasse v. Brent***, 494 P.2d 9, 13

(Cal. 1972). The law firm may recover the reasonable value of its services upon termination of its employment under the contingent fee contract with Poole. *See Kroff v. Larson*, 167 Cal. App. 3d 857, 860, 213 Cal. Rptr. 526, 527 (1985); *Wegner v. Arnold*, 713 N.E.2d 247, 250 (Ill. App. Ct. 1999); *Clerk of Superior Court of Guilford County v. Guilford Builders Supply Co.,* 361 S.E.2d 115, 118 (N.C. Ct. App. 1987). Because a court is called upon to decide what "reasonable compensation" might be and because the amount sought is not liquidated, it is appropriate that a chancery court, sitting in equity, make these determinations.

¶10. Many jurisdictions hold that a contingent fee contract may amount to an equitable assignment of a prospective settlement. *See* Annotation, *Agreement for Contingent Fee as Assignment of Interest in Judgment*, 19 A.L.R. 99; Annotation, *Attorney's Contract for Contingent Fee as Amounting to an Equitable Assignment of Interest in Cause of Action, or Proceeds of Settlement Thereof*, 124 A.L.R. 1508, 1509 (1940). *See also De Winter v. Thomas*, 34 App.D.C. 80, 84 (1909); *Lewsader v. Wal-Mart Stores, Inc.,* 694 N.E.2d 191, 196-99 (Ill. App. Ct.1998); *Clerk of Superior Court of Guilford County*, 361 S.E.2d at, 117. This Court has held that "any order or assignment, oral or written, to pay out of a particular fund . . . does operate as an equitable assignment." *Anaconda Aluminum Co. v. Sharp*, 243 Miss. 9, 136 So. 2d 585 (1962) (quoting Annotation, 32 A.L.R. 955). The employment contract provides that Poole "assign[s] and set[s] over . . . [a percentage of the] proceeds thereof recovered" to the law firm. Therefore, the employment contract creates an equitable assignment under Mississippi law. Chancery courts have jurisdiction over "actions to enforce equitable assignments." Billy G. Bridges & James W. Shelson, *Griffith's Mississippi Chancery Practice*, § 24, at 19 (2000).

¶11. With respect to Poole's claimed violation of right to jury trial, there is no right to trial by jury in chancery court. "[T]he Constitution and the rules pertaining to jury trial have no effect in Chancery Court unless a particular statute requires a jury." *Id*. § 597 at 438 (footnote omitted). *See also Tillotson v. Anders*, 551 So. 2d 212, 214 (Miss. 1989).

¶12. We find that the contingent fee agreement created an equitable assignment to the Gwin firm of a portion of Poole's interest in Drouet's Estate, that the chancery court has jurisdiction over this matter, and that the Gwin firm's claims are not based on breach of contract.

## II. WHETHER AN ACTION FOR *QUANTUM MERUIT* IS AN ACTION AT LAW.

¶13. Traditionally, in Mississippi, courts of equity have jurisdiction over *quantum meruit* suits involving attorney-client contingent fees. For example, in *Pannell v. Guess*, 671 So. 2d 1310, 1315 (Miss. 1996), the case was remanded for the *chancellor* to examine the reasonableness of the contingent fee, restructure the percentage of recovery if necessary, and "assess a fee based on *quantum meruit*." *See also Duggins v. Guardianship of Washington*, 632 So. 2d 420, 431 (Miss. 1993); *Tyson v. Moore*, 613 So. 2d 817 (Miss. 1992). Indeed, in *In re Estate of Stewart*, 732 So. 2d 255 (Miss. 1999), the Court stated as follows:

> Recovery in quantum meruit is a remedy based in contract that is premised on "either [an] [sic] express or 'implied' contract." The findings by the *chancellor* and the record support the conclusion that Logan & Bise rendered legal services at the request of Stewart with the expectation of payment. In such cases, the law implies a contract to pay for said services. Where the recovery is based in quantum meruit, the amount of recovery is "limited to the monetary equivalent of the reasonable value of the services rendered to the "decedent" for which payment has not been tendered.

*Id.* at 259 (emphasis added) (citations omitted). So the Court, in one paragraph, stated that, even though a *quantum meruit* case supposes an implied contract, suit for the breach of which are usually brought in circuit court, a *chancellor* is to determine whether such an implied contract exists and, if breached, what the damages might be.

¶14. Poole directs the Court's attention to ***Webb v. B.C. Rogers Poultry, Inc.***, 174 F.3d 697 (5th Cir. 1999), where a divided Fifth Circuit panel held that a *quantum meruit* action, although equitable in nature, is in fact an action at law due to the fact that it seeks money damages. *Id.* at 704-05. However, we adhere to our own long-held precedent for the more persuasive reasons in the dissent of Judge Politz in ***Webb***:

> Given the [United States] Supreme Court's historical emphasis, it is my perception that the focus should be upon the origin of the relief and its position at the time the federal judicial system was created, not how the cause of action has since evolved. The roots of *quantum meruit* are in the courts of equity; claims for *quantum meruit* appeared in those courts before the cause of action could be pursued at law. Claims for *quantum meruit* were pursued in the courts of equity at the birth of our judicial system. Thus, despite some indications, historically speaking, that *quantum meruit* was a legal cause of action, I am not prepared to dispositively rule that *quantum meruit* is a legal cause of action.

*Id.* at 706-07 (footnotes omitted).

¶15. We find that *quantum meruit* claims are equitable in nature and should be brought in the chancery court.

## CONCLUSION

¶16. This matter is not a suit for breach of contract and damages related thereto. The Gwin firm's suit is based on equitable assignment and *quantum meruit*, claims which have traditionally been brought in the chancery courts. Therefore, the order of the Chancery Court of Wilkinson County denying Poole's motion to transfer is affirmed, and this case is remanded to that court for further proceedings.

¶17. **AFFIRMED AND REMANDED.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, COBB, DIAZ AND EASLEY, JJ., CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

> **MILLS, JUSTICE, DISSENTING:**

¶18. I differ with the solicitous characterization by the chancellor below and the majority in this case of attorney-client contracts. The majority repeatedly refers to the "special relationship" between attorney and client and upholds the chancellor's refusal to treat this action as a breach of contract. A contract between an attorney and a client is no different than any other contract. The dispute in the case sub judice is a contract dispute. They say she didn't pay 'em. "[A] breach of contract claim is best heard in circuit court. . . ." *[Burnette v. Hartford Underwriters Ins. Co.](#)*, 770 So. 2d 948, 950 (Miss. 2000) (citing *[Southern Leisure Homes, Inc. v. Hardin](#)*, 742 So. 2d 1088 (Miss. 1999)).

¶19. Though attorneys do labor under higher ethical and professional standards than most other professionals, they are not entitled to special treatment beyond that afforded to any other party alleging a

breach of contract. Granted, this is an action for quantum meruit, an equitable remedy, but the underlying cause is for breach of contract. The law firm is claiming that it was not paid for its services. The Gwin firm has received special treatment at the expense of Ms. Poole's rights in this case thus far. I would reverse the chancellor's decision with instructions to transfer this action to circuit court. Ms. Poole is entitled to a jury in this case. For the foregoing reasons, I respectfully dissent.