Michelle JONES, et al., Plaintiffs,

v.

Steven HOEL, M.D., et al., Defendants.

No. 5:01–CV–179.

United States District Court,
E.D. Texas,
Texarkana Division.

March 20, 2002.

cy, Carter & Elliott, Texarkana, TX, for Plaintiffs.

Russell Winfield Schell, Schell, Quillin, Mitchel & Cooley, LLP, Dallas, TX, for Steven Hoel, M.D.

Victor F. Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, TX, Stanley T. Thiebaud, Cathryn Ruth Paton, Stinnett, Thiebaud, Remington, LLP, Dallas, TX, for Jim Randles, M.D., Baylor Family Practice Center.

Russell Winfield Schell, Schell, Quillin, Mitchel & Cooley, LLP, Dallas, TX, Victor F. Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, TX, for Douglas Sheena, M.D.

Victor F. Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, TX, Linda M. Stimmel, Gerald A. Tadlock, Stewart & Stimmel, LLP, Dallas, TX, for Dana Bleakney, M.D., Baylor Medical Center at Garland.

Russell Winfield Schell, Edward Patrick Quillin, Schell, Quillin, Mitchel & Cooley, LLP, Dallas, TX, Victor F. Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, TX, for Emcare, Inc., Emcare Holdings, Inc., Emcare of Texas, Inc., Emcare Physicians Network, Inc., Emcare OP, L.P., Emcare Medical Services, Inc., Emcare Physician Staffing Services, Inc.

Alan Lee Campbell, Mary Ellen Skinner, Cowles & Thompson, Dallas, TX, Victor F. Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, TX, for M. C. Perry, M.D., Anatomic and Clinical Pathology Laboratories, LLP.

Russell Winfield Schell, David Lewis Pacione, Schell, Quillin, Mitchel & Cooley, LLP, Dallas, TX, for EM–1 Medical Services, P.A.

Eric H. Marye, Eric H. Marye & Associates, Dallas, TX, John Robert Mercy, Mer-

## MEMORANDUM OPINION
## AND ORDER

FOLSOM, District Judge.

Before the Court is Defendant's Motion to Stay Proceedings (Doc. No. 102). After having heard oral arguments, and having reviewed the motion, the law, and the relevant briefing, the Court finds that Defendants' Motion is not well taken and should be **DENIED.**

## I.  BACKGROUND

This is a medical malpractice case brought by Michelle Jones, Ray Leonard, Jewell Leonard, and Lisa Leonard Bailey against sixteen Defendants for violations of 42 U.S.C. § 1395 (the Emergency Medical Treatment and Active Labor Act—EMTALA), wrongful death and survival, and negligence.  Plaintiffs allege that in a series of events beginning on March 15, 2000, Defendants failed to properly and promptly diagnose and treat Jeffrey Leonard for bacterial endocarditis and thus caused his death.

On February 1, 2002, PHICO, the insurance carrier for Defendants Steven Hoel M.D.; Douglas Sheena, M.D.; Emcare, Inc.; Emcare Holdings, Inc.; Emcare Medical Services, Inc.; and Emcare Physician Staffing Services, Inc.; was placed into liquidation by the Insurance Commissioner for the Commonwealth of Pennsylvania.  On February 5, 2002, the Commissioner of Insurance of the State of Texas declared PHICO an impaired insurer by issuing a Designation as an Impaired Insurer Under Texas Insurance Code Article 21.28–C. This designation prompted Defendants to file a Notice of Stay in this Court pursuant to Texas Insurance Code Article 21.28–C § 17 (the § 17 Stay) which provides that, "All proceedings in which an impaired insurer is a party or is obligated to defend a party in any court in this state . . . shall be stayed for six months and any additional time thereafter as may be determined by the court from the date of designation of impairment or an ancillary proceeding is instituted in the state, whichever is later, to permit proper defense by the receiver or the association of all pending causes of action."

Although Defendants' filing was entitled a *Notice* of Stay, the Court docketed the filing as a *Motion* for Stay. In an Order dated February 14, 2002, the Court sought briefing from the parties on the issue of whether federal courts were bound by the mandatory stay articulated in the Texas Insurance Code Article 21.28–C § 17.  The parties submitted substantial briefing on the issue, and on March 6, 2002, the Court conducted a hearing and heard the parties' arguments.[1]  The prompt resolution of this issue is important because if the Court finds that the Texas statute is binding on this Court, the Texas statute calls for a mandatory stay issued retroactively to the date the Designation of Impaired Insurer letter was issued.

No party disputes that the documentation presented by Defendants in support of their motion to stay would require a Texas state court to stay a case such as the one at bar; however, the parties are proceeding before a federal court, and this Court must determine whether it is required to or should in its discretion follow the statutory mandates of the State of Texas with regard to the stay.

---

**1.**  Attorneys for Plaintiffs and Defendants Dr. Randles, Baylor Family Practice Center, Baylor Medical Center at Garland, Dr. Bleakney, Dr. Roberts, Anatomic & Clinical Pathology Laboratories, and Dr. Perry were present at the hearing.  The parties to which the insurance companies owed the duty to defend failed to appear in person or by their attorneys.

## II. ANALYSIS

■ Typically, states are, "without power to restrain federal-court proceedings in *in personam* actions." *Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). Authority to relax that rule lies with Congress. *Id.* Defendants argue that Congress has given the states the, "sole and unambiguous authority" to regulate the insurance business. Defendants cite the McCarran–Ferguson Act which was passed in 1945 to ease fears of a federal takeover of insurance regulation and to restore that power to the states.

The McCarran–Ferguson Act provides that, "[t]he business of insurance, and every person engaged therein, shall be subject of the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). If the § 17 Stay is a regulation of the business of insurance, this Court would be required to stay the pending litigation. Plaintiffs argue that the very act of staying the case conflicts with the Federal Rules of Civil Procedure because if a stay were entered, several deadlines and Orders entered by the Court and required by the Federal Rules would not be met or would be negated.

■ First and foremost, the Court must examine the language of the Texas statute to determine if it was, in fact, enacted as a means to enjoin federal courts from acting. Looking at the language of the § 17 Stay, the Court is left uncertain as to its application in the present instance. First, the statute requires a stay when, "an impaired insurer is a party or is obligated to defend a party *in any court in this state . . .* " (emphasis added). Because the Texas legislature could have chosen to specifically articulate that the stay was applicable only to Texas state courts and chose not to, the Court is left with the impression that the statute applies to any court physically located in the state, which would include federal courts. However, the Court only finds Texas state court cases applying the stay. Furthermore, the statute goes on to provide that, "[a] deadline imposed under the Texas Rules of Civil Procedure or the Texas Rules of Appellate Procedure is tolled during the stay." Clearly, the Texas Legislature contemplated the effect that the stay would have on plaintiffs pursuing actions in Texas state courts and provided them with relief from deadlines found in the Texas rules. No such relief was contemplated for plaintiffs pursuing cases in federal courts. Additionally, the statute provides that the six month stay is triggered by the later of, "the date of the designation of impairment or an ancillary proceeding is instituted *in the state.*" (emphasis added). Defendants have only provided the Court with a letter of impairment issued by the Texas Insurance Commission. No evidence of an ancillary proceeding in the state of Texas has been produced. The only proof provided by Defendants of an ancillary proceeding in the underlying liquidation action is documentation of the Pennsylvania liquidation.

Having examined the language of the statute, the Court is not convinced that the § 17 stay was enacted by the Texas Legislature with the purpose of binding federal courts. Further, despite the fact that the parties do not contest the issue, the Court is not convinced that Defendants have provided the Court with sufficient documentation to enact a stay even if the statute were to be binding on this Court.

■ Although the Court is unable to conclude with certainty that the § 17 Stay applies to federal courts, the Court will next, out of an abundance of caution, determine whether the § 17 stay is a regulation of insurance as is contemplated by the McCarran–Ferguson Act. The focus of the McCarran–Ferguson Act is the relationship between the insurer and its policyholders. *U.S. Treasury Dept. v. Fabe,* 508 U.S. 491, 501, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). To determine if a law was enacted, "for the purpose of regulating the business of insurance," the Court must consider whether, "the practice has the effect of transferring or spreading a policyholder's risk; (2) the practice is an integral part of the policy relationship between the insurer and the insured; and (3) the practice is limited to entities within the insurance industry." *Munich American Reinsurance Company v. Crawford,* 141 F.3d 585 (5th Cir.1998); *citing Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). (This is popularly known as the *Pireno* test.)

A fundamental aspect of an insurance contract is the insurance company's assumption of the duty to defend the insured. No party has disputed the fact that PHICO owes its insureds who are defendants in this action such a duty. As far as the *Pireno* test above is concerned, the United States Supreme Court has determined that performance of the terms of the insurance contract is an, "essential part of the 'business of insurance.' " *Fabe,* 508 U.S. at 505, 113 S.Ct. 2202. "Without performance of the terms of the insurance policy, there is no risk transfer at all. Moreover, performance of an insurance contract also satisfies the remaining prongs of the *Pireno* test." *Id.* at 504, 113 S.Ct. 2202. On its face, the language of *Fabe* seems to answer the question of whether a § 17 Stay regulates the business of insurance; however, no federal case directly addresses the effect of the § 17 Stay, and no case discusses the effects of enjoining suits against a policyholder while no parallel state action exists.

Both Plaintiffs and Defendants direct the Court to *Munich* for guidance. In that case, the Fifth Circuit held that an Oklahoma state court order enjoining proceedings in a federal district court brought by reinsurers against an insurer who was in liquidation reverse pre-empted the Federal Arbitration Act as the injunction was a state regulation of insurance as was contemplated under the McCarran–Ferguson Act. That case is distinguishable from the one at bar for several reasons. First, the federal-court proceedings in *Munich* were directly against the insurance company, not one of its policyholders. Next, in *Munich* the Plaintiffs sought an order from the federal court directing the parties arbitrate pursuant to the Federal Arbitration Act in order to determine who was entitled to 1.7 million in settlement proceeds received by the liquidated insurer. In the case at bar there is no fixed amount of money at stake. To the contrary, in this case, the Court is being asked to determine liability and to assess damages. The effect of a stay on a substantive determination such as the one before this Court would be much more profound than the effect of a stay on a determination of parties' rights to a specified and liquidated sum of money. Additionally, in *Munich,* the Fifth Circuit recognized that the Oklahoma court presiding over the liquidation would have the same power to order arbitration under the Federal Arbitration Act as would the federal district court. In the case at bar, there is no parallel state proceeding at which the liability of Defendants will be determined with regard to the death of Jeffrey Leonard. No party has provided the Court with any case ad-

dressing the effect of staying a case when the court overseeing the liquidation would have no power to resolve the issue that has been stayed. Further, no party has provided the Court with any case in which proceedings against the policyholder have been stayed.

Defendants rely heavily on *Clark v. Fitzgibbons*, 105 F.3d 1049, 1051 (5th Cir. 1997) where the Fifth Circuit acknowledged that allowing a matter to continue while an insurance company was in liquidation would go against federal policy allowing states to control insurance regulation. *Clark*, however, was not a suit against policyholders. It was a suit by the administrator of the insurance policies, acting on behalf of the insureds, against the reinsurer. Additionally, Defendant relies on *Anshutz v. J. Ray McDermott Co., Inc.*, 642 F.2d 94 (5th Cir.1981). Like in *Clark*, the Fifth Circuit in *Anshutz* held that an order enjoining actions by an insured against *the insurance company itself* was proper. *Id.* at 95. Neither of these cases aids the Court in determining the propriety of a stay that enjoins actions against a *policyholder*.

The Fifth Circuit warned, "[w]e surely are not saying that a State has the power to enjoin a party generally from pursuing federal remedies in federal court." *Munich*, 141 F.3d at 595. The Court finds that to stay the case at bar would create a severe impact on federal cases that relate only tangentially to the business of insurance. Enjoining cases against policyholders, while under the technical teaching of *Fabe*, could be considered proper state action on the "business of insurance" only effects the policyholders as far as they are not represented in the action against them. In the present case, the insureds' attorneys have taken on a duty to represent them and are obliged to continue such duty until relieved by this Court. Fur-

thermore, refusal to enter a stay in the present case would not undermine the receivership action in Pennsylvania. If the case were to be resolved against PHICO's insureds, it would only establish another obligation owed by PHICO, it would not harm the process of receivership. Finally, the case at bar is set for trial on November 12, 2002, pursuant to an Agreed Docket Control Order submitted by the parties. The trial date falls outside of the period that would be encompassed by the § 17 Stay if it were observed. Based on these reasons, the Court finds that the § 17 stay is not a regulation of the business of insurance in the current situation, and entering a stay would not be in the interests of justice.

As an alternative to the § 17 Stay, Defendants urge that the Court refrain from hearing the case at bar pursuant to the Burford Abstention doctrine. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Burford Abstention, however, is proper only when there is a parallel state court proceeding and federal intervention would disrupt state efforts to form a coherent policy with regard to the important state interest. *Id.* at 333–334, 63 S.Ct. 1098. Because Burford Abstention assumes that parallel state proceedings are paramount to state policy and are sufficient to resolve the important state issue, Burford Abstention calls for the federal court to decline exercising its jurisdiction by *dismissal* of the federal case. *Id. See also* 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, Federal Practice and Procedure § 4245 (2nd ed.1988). As previously articulated, no parallel state proceedings are occurring. Burford Abstention and dismissal of the case at bar would cause irreparable harm to the Plaintiffs as they would be forced to forfeit their case as their statute of limitations would have

run. The Court will not abstain from considering this case.

### III. CONCLUSION

Due to the Court's conclusion that the Texas statute's application to federal courts is unclear and the court's further determination that even if the Texas statute is to apply to federal courts it cannot properly enjoin federal courts in this instance, the Court hereby

**ORDERS** that Defendants' Motion for Stay is **DENIED.**