Howard C. WILLIAMSON, III, Janice S. Williamson, Lawrence A. Norman, Kelli Jo Norman, and Bexar Metropolitan Water District, Plaintiffs,

v.

**GUADALUPE COUNTY GROUNDWATER CONSERVATION DISTRICT, Defendant.**

**Civil No. SA–03–CA–1119–OG.**

United States District Court,
W.D. Texas,
San Antonio Division.

July 28, 2004.

---

Thomas K. Robinson, Miller & Robinson, Gonzales, TX, Louis T. Rosenberg,

Robert L. Wilson, III, Law Offices of Louis T. Rosenberg, et al., North Ottis West, San Antonio, TX, for Plaintiffs.

Robin V. Dwyer, Moore, Pape & Dwyer, L.L.P., Seguin, TX, R. Gaines Griffin, Davidson & Troilo, P.C., San Antonio, TX, for Defendant.

## ORDER

ORLANDO L. GARCIA, District Judge.

█ On this date came on to be considered the report and recommendation of United States Magistrate Judge Pamela A. Mathy (Dkt. #16), and partial objections thereto (Dkt. #22). When a party objects to a report and recommendation, the Court is required to make a *de novo* determination of those portions of the report or proposed findings or recommendations to which objection is made. *Kreimerman v. Casa Veerkamp*, 22 F.3d 634, 646 (5th Cir.1994); 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).

The Court has conducted an independent review of the entire record, a *de novo* review of the matters raised by the objections, and has reviewed the applicable law. The Court concludes that the objections lack merit, and they should be overruled. The Court further concludes that the Magistrate Judge's findings and conclusions are correct in all respects, and should be accepted.

█ Accordingly, it is ORDERED that Bexar Met's partial objections are OVERRULED, and the report and recommendation is ACCEPTED in its entirety, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b). It is further ORDERED that Defendant's Motion to Dismiss (Dkt. #5) is GRANTED IN PART and DENIED IN PART for the reasons stated in the recommendation. Specifically, all claims for equitable or discretionary relief are DISMISSED without prejudice pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and its progeny, and all claims for money damages are STAYED for a period of at least sixty (60) days.[1] Upon the expiration of sixty (60) days from the date below, the parties shall file a written advisory regarding the status of any proceedings at the state level or on appeal. The Court will then determine whether the stay should be extended or lifted. No status conference or hearing is necessary at this time.

## *REPORT AND RECOMMENDATION*

PAMELA A. MATHY, United States Magistrate Judge.

TO: Honorable Orlando L. Garcia, United States District Judge

Pursuant to the Order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(i)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

### I. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

1. While the Court may not dismiss actions for damages based on abstention principles, the Court may stay or postpone the adjudication of such actions. *Quackenbush v. Allstate Ins.*

*Co.*, 517 U.S. 706, 719–721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

1. Docket no. 11.

## II. *PROCEDURAL HISTORY*

This case was initiated on November 7, 2003, when plaintiffs Howard C. Williamson, III, Janice S. Williamson, Lawrence A. Norman, Kelli Jo Norman (at times referred to as "individual plaintiffs") and Bexar Metropolitan Water District ("BexarMet") (collectively referred to as "plaintiffs") filed a complaint against defendant Guadalupe County Groundwater Conservation District's ("GCGCD") concerning, in general, GCGCD's denial of certain groundwater withdrawal permit applications which would have allowed the Williamsons and the Normans, who own a 4,511.24 acre tract of land known as the "Wells Ranch," to withdraw percolating groundwater from the Carrizo and Wilcox aquifers.[2] More specifically, plaintiffs allege that (a) on February 13, 2003, plaintiff filed an application for groundwater withdrawal with GCGCD, later supplemented, which was denied initially on May 8, 2003 and on rehearing on August 25, 2003; and (b) on April 8, 2003, plaintiffs filed a second set of nine applications for groundwater withdrawal with GCGCD, later supplemented, which GCGCD denied initially on July 28, 2003, and on rehearing on October 9, 2003.

Plaintiffs' complaint alleges six causes of action based on GCGCD's alleged wrongful denial of their applications. The first cause of action seeks a *de novo* review of GCGCD's denial of plaintiffs' second set of nine applications.[3] The second cause of action is described as an "appeal of administrative denial" of the second set of nine applications.[4] The third cause of action alleges violations of the Fifth Amendment of the United States Constitution and Article I, Section 17 of the Texas Constitution based on an uncompensated taking when each of plaintiffs' ten applications were denied.[5] The fourth cause of action alleges violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section III of the Texas Constitution based on a denial of equal protection when each of plaintiffs' ten applications were denied.[6] The fifth cause of action alleges a violation of substantive due process in violation of the Fourteenth Amendment to the United States Constitution when each of plaintiffs' ten applications were denied.[7] The sixth cause of action alleges a violation of Title 42, United States Code, Section 1983 concerning each of plaintiffs' ten applications, alleging a violation of the individual plaintiffs' previously alleged rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution under color of state law.[8] Plaintiffs request the issuance of a declaratory judgment to declare: "the administrative denial of Plaintiffs' well permit applications null and void;" "a violation of Plaintiffs' rights under the Fifth Amendment of the U.S. Constitution, and Art. I, Section 17 of the Texas Constitution;" "a violation of Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution, and Art. I, Section III of the Texas Constitution;" "a violation of Plaintiffs' rights to substantive due process as guaranteed by the Fourteenth Amendment of the U.S. Constitution;" and "the rights of the parties by Final Decree."[9] Plaintiffs also ask

2. Docket no. 1.
3. *Id.* at 14–17.
4. *Id.* at 17–18.
5. *Id.* at 18–22.
6. *Id.* at 23–25.
7. *Id.* at 25–27.
8. *Id.* at 27.
9. *Id.* at 28.

for a decision to "[r]everse the administrative denial of Plaintiffs' well permit applications and remand with instructions" and to "[f]ind a violation of 42 U.S.C. § 1983, acting under color of law."[10] Plaintiffs request an "award of damages, attorneys' fees and costs of courts to Plaintiffs."[11] Further, plaintiffs request "any further remedies and relief at law or in equity, to which Plaintiffs may show themselves entitled."[12] Finally, plaintiffs request expedited consideration pursuant to Texas Water Code § 36.252 and demand a trial by jury.[13]

On December 1, 2003, defendant GCGCD filed a motion to dismiss all claims against it.[14]

In brief, GCGCD argues that plaintiffs' complaint should be dismissed on the following grounds: the *Burford* abstention doctrine applies; plaintiffs' "taking" claim is unripe; plaintiffs have not been denied equal protection of the laws; plaintiffs have not been deprived of property without due process of law; plaintiffs have failed to state a section 1983 claim; upon the dismissal of plaintiffs' other claims, plaintiffs' claim for declaratory relief must be dismissed for lack of jurisdiction; and upon the dismissal of plaintiffs' federal claims, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.[15]

On December 12, 2003, BexarMet filed its response to defendant's motion to dismiss.[16] On December 16, 2003, the individual plaintiffs filed their combined response to defendant's motion to dismiss.[17] In brief, the individual plaintiffs and BexarMet, who incorporate each other's responses, argue that: the *Burford* abstention doctrine is a rarely invoked and does not apply; any doctrine of equitable abstention is inapplicable to common law actions for monetary damages; the federal takings claims are ripe because Texas law prohibits condemnation of groundwater, the ripeness doctrine does not apply to takings for private use, and the ripeness doctrine does not apply to a "facial" claim for taking in violation of the Fifth Amendment.[18] Further, plaintiffs re-assert that: they have been denied equal protection and due process; they have validly stated a claim under section 1983; a declaratory judgment should issue; and exercise of supplemental jurisdiction over state claims is appropriate.[19] On February 2, 2004, the case was referred to the undersigned.[20]

## III. STATEMENTS OF FACTS

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court is required to consider plaintiffs' factual allegations as if they were true and to construe all inferences in favor of non-movant plaintiffs. A summary of those facts is as follows:

As noted, this lawsuit was precipitated by GCGCD's denial of plaintiffs' groundwater withdrawal permit applications which would have allowed plaintiffs to

---

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.* at 1, 27–28.

14. Docket no. 5.

15. *Id.* at 1–7.

16. Docket no. 8.

17. Docket no. 10.

18. *Id.* at 3–9; docket no. 8 at 1–7.

19. Docket no. 8 at 7–10; docket no. 10 at 10–15.

20. Docket no. 11.

withdraw percolating groundwater from the Carrizo and Wilcox aquifers flowing below the surface of the Wells Ranch.[21] More specifically, plaintiffs allege that in 1999, the individual plaintiffs entered into a contract with BexarMet through which, in sum, BexarMet obtained a surface and subsurface estate lease for drilling and producing groundwater from the Wells Ranch and exclusive title to all groundwater produced and, in exchange, the Williamsons received royalties and other consideration.[22] During the later portions of 1999, the plaintiffs developed infrastructure on the Wells Ranch for this purpose.

Defendant GCGCD was created on or about November 2000 and became operational in January 2001. At that time, GCGCD adopted rules pursuant to Texas Water Code § 36.101 and a Management Plan pursuant to Texas Water Code § 36.1071. The GCGCD's rules, effective January 11, 2001, prohibited drilling, equipping or completing groundwater withdrawal wells within the District's geographic boundaries without a permit issued by GCGCD and which limited annual groundwater production based on tract size to an annual maximum of approximately two acre-feet of water per surface acre of land.[23] Neither GCGCD's rules nor its Management Plan recognized or made reference to the property and contractual rights of plaintiffs upon the Wells Ranch. The Wells Ranch is situated in both Guadalupe and Gonzales Counties; only the portion of the Wells Ranch situated over Guadalupe County falls within the boundaries of the GCGCD.[24]

On February 13, 2003, plaintiffs filed their first application for a water well permit with the GCGCD.[25] On April 8, 2003, plaintiffs filed nine additional well permit applications which collectively sought permission to use nine groundwater withdrawal wells to withdraw a combined total of 6,000 acre-feet of percolating water from the portion of the Carrizo and Wilcox Aquifers situated beneath the Guadalupe County portion of the Wells Ranch.[26] After plaintiffs submitted the second set of nine applications, on or about April 16, 2003, GCGCD revised its rules, including Rule 5.4, reducing groundwater production limits by ninety percent to a new annual withdrawal limit of 2/10 of an acre foot of water per acre of contiguous water rights.[27]

On June 10, 2003, plaintiffs supplemented their second set of nine applications with supporting documentation.[28] On June

21. Docket no. 1. These aquifers are alleged to be underground geologic formations underlying all or part of 35 Texas counties traversing the State from Mexico to Louisiana. Id. at 4.

22. Id. at 3–6.

23. Id. at 7–8. Rule 5.4 limited a permittee to an annual withdrawal of a maximum of 652,-000 gallons of water per acre of water rights, alleged to be equal to two-acre feet of water per acre of land. Id. at 8 and n. 9.

24. Id. at 7 n. 7.

25. Plaintiffs' first application is not the subject of "the appeal provision of this lawsuit," docket no. 1 at 8 n. 10, namely, the first two causes of action which request a de novo review of the of the administrative denial of

the second set of nine applications and which "appeal" the administrative denial of the second set of nine applications. On May 8, 2003, GCGCD denied the first application; on May 27, 2003, plaintiffs requested a rehearing; on May 28, 2003, plaintiffs amended and supplemented their first application; plaintiffs' request for a rehearing was denied by operation of law on August 25, 2003. Id. at 12 and n. 15.

26. Id. at 9–10.

27. Id. at 10–11.

28. Id. at 12. In response to the rules amendment and greater limit, plaintiffs asserted that their first permit application and the nine permit applications which followed constitut-

12, 2003, the GCGCD conducted a hearing on the second set of nine applications; July 12 and July 28, 2003 meetings of the GCGCD also addressed the second set of nine applications; on July 28, 2003, the GCGCD denied the applications.[29] On August 14, 2003, plaintiffs requested a rehearing which the GCGCD denied on October 9, 2003.[30]

## IV. ISSUE

Whether defendant's motion to dismiss should be granted.

## V. STANDARDS

### A. Rule 12(b)(6), Fed.R.Civ.P.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, plaintiffs must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[31] When considering a motion to dis-

miss for failure to state a claim, "all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff."[32] The United States Supreme Court has elaborated:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be proved consistent with the allegations," *Hishon*, supra, 467 U.S. at 73, 104 S.Ct. at 2232, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.[33]

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[34] Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to pre-

---

ed a water production "project." Plaintiffs contended the project should be considered on the basis of the first permit application's filing date of February 13, 2003, and the higher annual groundwater production limits then in effect, citing Texas Local Government Code § 245.002(a), which provides, in part: "Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any order, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the permit is filed." Subsequently, GCGCD asked plaintiffs to withdraw voluntarily the second set of nine applications and re-file them in compliance with the new lower production limits. Plaintiffs refused to do so.

**29.** *Id.* at 12–13.

**30.** Plaintiffs filed this suit on November 7, 2003, but note that the GCGCD scheduled plaintiffs' permits for rehearing on November 13, 2003. *Id.* at 14.

**31.** *Kaiser Alum. & Chem. Sales, Inc. v. Avondale,* 677 F.2d 1045, 1050 (5th Cir.), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), quoted in *Capital Parks, Inc. v. Southeastern Advertising and Sales Sys., Inc.,* 864 F.Supp. 14, 15 (W.D.Tx.1993), *aff'd,* 30 F.3d 627 (5th Cir.1994).

**32.** *Fernandez–Montes v. Allied Pilots Assoc.,* 987 F.2d 278 (5th Cir.1993). *See Capital Parks, Inc.,* 30 F.3d at 629 ("A court's decision to dismiss for failure to state a claim may be upheld 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.' *Baton Rouge Bldg. and Constr. Trades Council AFL–CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986)."); *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985).

**33.** *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

**34.** *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

vent a motion to dismiss.[35] This is a rigorous standard, but subsumed within it is the requirement that a plaintiff state its case with enough clarity to enable the court and the opposing party to determine whether a claim is alleged.[36]

In the event that matters outside the pleadings are considered, a motion to dismiss for failure to state a claim upon which relief can be granted must be treated as a motion for summary judgment.[37]

## B. The Nature of § 1983

■■■■ Title 42, United States Code, section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create any substantive rights, but instead provides a remedy for violations of federal statutory and constitutional rights.[38] In order to state a cause of action under § 1983, the plaintiff's

claim for relief must allege facts establishing that: (1) plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) defendant acted under color of state law.[39] The Fifth Circuit has held that "section 1983 imposes liability for violations of rights secured by the Constitution, not violations of duties of care arising out of tort law."[40]

## VI. ARGUMENTS AND ANALYSIS

### A. Abstention

**Summary of Arguments**

GCGCD has moved to dismiss plaintiffs' complaint and application for declaratory judgment under the abstention doctrine, as enunciated in *Burford v. Sun Oil Co.*,[41] and as applied to groundwater regulation in *Sierra Club v. City of San Antonio*.[42] In a two-page argument, GCGCD acknowledges that "[t]he GCGCD functions as part of a comprehensive state regulatory program authorized by Texas Constitution, Art. XVI, Sec. 59 and Chapter 36 of the Texas Water Code," which, among other things, determines that "[g]roundwater conservation districts created as provided by this chapter are the state's preferred method of groundwater management through rules developed, adopted, and promulgated by a district in accordance with

**35.** *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir.1997); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994); *Fernandez–Montes*, 987 F.2d at 284.

**36.** *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir.1989).

**37.** *Village Harbor Inc. v. United States*, 559 F.2d 247, 249 (5th Cir.1977).

**38.** *Lafleur v. Texas Dept. of Health*, 126 F.3d 758, 759 (5th Cir.1997); *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

**39.** *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir.1997), *cert. denied*, 525 U.S. 822, 119 S.Ct. 65, 142 L.Ed.2d 51 (1998); *Fyfe v. Curlee*, 902 F.2d 401, 403 (5th Cir.1990); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir.1989).

**40.** *Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir.1987).

**41.** 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**42.** 112 F.3d 789 (5th Cir.1997).

the provisions of this chapter."[43] Expedited judicial review is provided in State court.[44] Given the importance of groundwater conservation to the State of Texas, GCGCD argues that abstention by the Court is proper "to allow the regulatory program established under state law a chance to act."[45] In response, plaintiffs collectively argue that *Burford* abstention is not applicable because, in sum, (1) plaintiffs' causes of action arise under federal law;[46] (2) plaintiffs seek "monetary damages, among other relief;"[47] (3) the case does not involve an "unsettled" area of Texas law;[48] (4) the mere existence of a state law regulatory scheme does not justify abstention;[49] (5) the case does not present a "potential for conflict" with Texas regulatory law;[50] and (6) *Sierra Club v. City of San Antonio,* relied upon by GCGCD in support of its motion, is distinguishable.[51]

**43.** Docket no. 5 at 1–2; Vernon's Tex Code Ann., Water Code, § 36.0051 (Supp.2004).

**44.** Vernon's Tex.Code Ann., Water Code, § 36.252 (Supp.2004).

**45.** Docket no. 5 at 2, 3–4.

**46.** Docket no. 8 at 2.

**47.** Docket no. 10 at 4; docket no. 8 at 7. As noted above, in addition to damages, fees and costs, plaintiffs seek: a declaration that the administrative denial of plaintiffs' well permit applications is null and void as well as of certain specified rights; a decision reversing the administrative denial of plaintiffs's well permit applications and a remand to the GCGCD with instructions; and any further, appropriate "remedies and relief at law or in equity." *See* docket no. 1 at 28.

**48.** Docket no. 8 at 2–4.

**49.** *Id.* at 2–7.

**50.** *Id.*

**51.** Docket no. 8 at 2, 5–7; docket no. 10 at 4–5.

## Analysis

Federal courts have a " 'virtually unflagging obligation . . . to exercise the jurisdiction given them' " by Congress.[52] Abstention, that is, declining to resolve a dispute over which a federal court has subject matter jurisdiction "is the exception, not the rule."[53] The *Burford* abstention doctrine is an " 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.' "[54] The *Burford* abstention doctrine allows a federal court to dismiss a case if it presents " 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial policy concern.' "[55]

**52.** *Colorado River Water Cons.Dist. v. United States,* 424 U.S. 800, 821, 96 S.Ct. 1236, 1248, 47 L.Ed.2d 483 (1976) (internal citation omitted). *See also England v. Louisiana Bd. of Med. Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464–65, 11 L.Ed.2d 440 (1964) (" 'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction' ") (internal citation omitted).

**53.** *Colorado River Water Cons.Dist.,* 424 U.S. at 813, 96 S.Ct. at 1244; *Wilson v. Valley Electric Membership Corp.,* 8 F.3d 311 (5th Cir.1993).

**54.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 728, 116 S.Ct. 1712, 1727, 135 L.Ed.2d 1 (1996) (quoting *Colorado River Water Cons. Dist.,* 424 U.S. at 813, 96 S.Ct. at 1244) (internal quotation omitted).

**55.** *Id.* at 726–27, 116 S.Ct. at 1726 (quoting *NOPSI v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. at 2514, 105 L.Ed.2d 298 (1989) (internal quotation omitted)).

In *Burford*, Sun Oil brought suit against Burford and others to enjoin the enforcement of an order of the Texas Railroad Commission granting Burford a permit to drill four wells on a plot of land in the East Texas oil field.[56] The Supreme Court held that the federal district court should have dismissed the case, because Texas had established a state regulatory system to deal with complicated issues involved in local oil drilling regulation. The Court further noted that Texas law provided for "a system of thorough judicial review by its own State courts" which concentrated "all direct review of the Commission's orders in the State district courts of Travis county," with further review by a branch of the Court of Civil Appeals and by the State Supreme Court "[t]o prevent the confusion of multiple review of the same general issues."[57] Under such circumstances, federal courts could make a "small contribution" in becoming involved in inherently local matters involving the management of oil and gas fields, covered by a complex state regulatory scheme, with the inevitable product being "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy."[58] Accordingly, the Court held that federal courts should abstain from exercising federal question jurisdiction to adjudicate "colorable constitutional claims," and defer to a state's resolution of "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case then at bar."[59]

▪ A decision to abstain under *Burford*, must be "based on a careful consideration of the federal interests in retaining jurisdiction over the dispute" and ultimately represents a determination "that the State's interest are paramount and that [the] dispute would best be adjudicated in a state forum."[60] Although there is no "formulaic test" for deciding whether the case at bar comes within the narrow exception of *Burford*, the Fifth Circuit has extracted five factors that should be considered: (1) "whether the cause of action arises under federal or state law;" (2) "whether the case requires inquiry into unsettled issues of state law;" (3) "the importance of the state interest involved;" (4) "the state's need for a coherent policy in that area;" and (5) "the presence of a special state forum for judicial review."[61] Further, in *Quackenbush*, the United States Supreme Court clarified that "federal courts have the power to dismiss or remand cases based on abstention principles **only** where the relief being sought is equitable or otherwise discretionary," such as a request for declaratory judgment.[62] A federal "court may not abstain under *Burford* when the plaintiff seeks **only** legal relief," such as an award

---

**56.** 319 U.S. at 316–17, 63 S.Ct. at 1098–99.

**57.** *Id.* at 325–26, 63 S.Ct. at 1103.

**58.** *Id.* at 327, 63 S.Ct. at 1104.

**59.** *Colorado River Water Cons.Dist.*, 424 U.S. at 815 & n. 21, 96 S.Ct. at 1244 & n. 21 (*Burford* as well as *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), "raised colorable constitutional claims and were therefore brought under federal-question, as well as diversity jurisdiction. While abstention in

*Burford* and *Alabama Public Service* had the effect of avoiding a federal constitutional issue, the opinions indicate that this was not an additional ground for abstention in those cases.").

**60.** 319 U.S. at 327, 63 S.Ct. at 1104.

**61.** *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir.1993).

**62.** 517 U.S. at 731, 116 S.Ct. at 1728 (emphasis added).

of money damages.[63] As recently explained by the Fifth Circuit:

> In applying *Burford* abstention, the court does not necessarily consider whether the cause of action is based on state or federal law, but instead looks at whether the plaintiff's claim is entangled in an area of state law that must be untangled before the federal case can proceed. *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997). Where timely and adequate state-court review is available, *a federal court sitting in equity must* decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the questions in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.[64]

**63.** *Garamendi v. Allstate Ins. Co.*, 47 F.3d 350, 356 (9th Cir.1995) (emphasis added).

Prior to *NOPSI*, the Supreme Court had applied some forms of abstention to "special" classes of damage actions. *See Fair Assessment in Real Estate Assoc. v. McNary*, 454 U.S. 100, 102, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981) (citing the "important and sensitive" nature of challenges to state tax systems when applying *Burford* abstention to a damage action); *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959) ("Although an eminent domain proceeding is deemed for certain purposes of legal classification as a 'suit at common law' ... it is of a special and peculiar nature" such that *Burford* abstention doctrine was applied to damage action). *But see Fair Assessment in Real Estate Assoc. v. McNary*, 454 U.S. 100, 102, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981) (Brennan, J., dissenting) ("While the 'principle of comity' may be a source of judicial policy, it is emphatically no source of judicial *power* to renounce jurisdiction.... There is little room for the 'principle of comity' in actions at law where, apart from matters of administration, judicial discretion is at a minimum.") (emphasis in original). In *NOPSI*, the Court made it clear that the discretion in granting "certain types of relief" belongs to "a federal court *sitting in equity* [which] must decline to interfere with the proceedings or orders of state administrative agencies" when the *Burford* criteria are met. 491 U.S. at 361, 109 S.Ct. at 2514 (emphasis added). "By locating the source of the power to abstain in historical equitable discretion, while also reminding courts that their obligation to hear cases within their jurisdictional grants is 'virtually unflagging,' ... [491 U.S. at 361, 109 S.Ct. at 2514] ..., the Supreme Court gave strong indication that the power to abstain under *Burford* should not apply in suits at law." *Garamendi v. Allstate Ins. Co.*, 47 F.3d at 356. *See Baltimore Bank for Cooperatives v. Farmers Cheese Co-op.*, 583 F.2d 104, 111 (3rd Cir.1978) ("The district court, however, ... impermissibly extended abstention to a common law action."). In *NOPSI*, the Court acknowledged that "*Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." 517 U.S. at 730–31, 116 S.Ct. at 1728.

**64.** *Koerner v. Garden District Assoc.*, 78 Fed. Appx. 960, 963 (5th Cir.2003) (emphasis added). In *Koerner*, the Court affirmed the decision of the District Court to stay, pursuant to *Burford* abstention, the litigation of a federal civil rights action pending the resolution of a related state court action. Both sets of plaintiffs cite to *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697 (5th Cir.1999), for the proposition that abstention is not appropriate in actions seeking damages. Docket no. 8 at 7; docket no. 10 at 3, 5. Plaintiffs' citations to *Webb* are inapposite. In *Webb*, a state court-appointed receiver brought suit in state court against defendants to collect unpaid workers' compensation premiums allegedly belonging to the insurance company in state receivership, alleging causes of action for breach of contract, *quantum meruit*, and suit on a sworn account, for which damages, costs and fees were sought. 174 F.3d at 699. Defendants removed the case to federal district court based on diversity of citizenship; the United States District Court for the Western

Because plaintiffs request "equitable or discretionary relief"—that is, the several requests for declarations of federal and state constitutional and statutory rights, including a declaration that "the administrative denial of Plaintiffs' well permit applications null and void,"[65] a request for a determination to "[r]everse the administrative denial of Plaintiffs' well permit applications and remand with instructions,"[66] as well as a request for "any further remedies and relief at law *or in equity,* to which Plaintiffs may show themselves entitled"[67] —the Court considers whether the *Burford* abstention doctrine otherwise favors abstention.

■■■ With respect to the first factor, plaintiffs' first two causes of action seek review of matters that arise under state law and appear to be tantamount to a request for judicial review of GCGCD's decision on the second set of nine applications—but in federal court rather than State court, as provided under the relevant provisions of the Texas Water Code. The remaining four causes of action allege violations of federal constitutional or statutory law[68] related to alleged violations that occurred when GCGCD denied each of the ten applications. In *NOPSI,* the Supreme

Court observed that although *Burford* itself involved federal and state claims, the federal constitutional issue was not substantial, and abstention otherwise not be appropriate when the case "does not involve a state-law claim."[69] Here, state-law claims have been presented. Although federal question subject matter jurisdiction exists over the "colorable" federal claims alleged in the third through sixth causes of action, the existence of state law claims allows for *Burford* abstention to be applied.[70] Further, as discussed further below, "Burford abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.' "[71]

With respect to the second factor, it is clear that state law is inextricably linked to an evaluation of the lawfulness of GCGCD's decision to deny plaintiffs' ten applications. Plaintiffs' first cause of action is simply a request for "*de novo* review" of the administrative denial of plaintiffs' second set of nine groundwater applications, citing Texas State case law, provisions of the Texas Water Code, and

District of Texas granted plaintiff's motion to remand the case based on *Burford* abstention. Over a dissent by Judge Politz, the Fifth Circuit determined that "[w]hen a court hears a claim for *quantum meruit,* it neither sits in equity nor possesses discretion," as "*quantum merit* is an action at law—a legal cause of action seeking money damages." *Id.* at 704. Because no equitable claim was present in the case, the Fifth Circuit held the trial court was "[s]itting at law, without discretion to deny relief" (*id.* at 705) which "precludes *Burford* abstention" (*id.* at 703). In the present case, unlike *Webb,* plaintiffs request "discretionary relief" as well as monetary relief.

65. *Id.* at 28.

66. *Id.*

67. *Id.* (emphasis added).

68. As noted, the third and fourth causes of action also allege violations of the Texas Constitution.

69. 491 U.S. at 360, 361–62, 109 S.Ct. at 2513, 2514–15.

70. *Colorado River Water Cons. Dist.,* 424 U.S. at 813 n. 21, 96 S.Ct. at 1244 n. 21 ("We have held, of course, that the opportunity to avoid decision of a constitutional question does not alone justify abstention by a federal court. . . . Indeed, the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention.") (citations omitted).

71. *Sierra Club,* 112 F.3d at 795.

GCGCD rules in support of their allegations.[72] Plaintiffs' themselves characterize their second cause of action as an "appeal of [the] administrative denial" of the second set of nine applications, citing provisions of the Texas Water Code and GCGCD rules in support of their allegations.[73] Plaintiffs' third through sixth causes of action, which allege in part or in whole violations of federal constitutional or statutory rights, also revolve around plaintiffs' challenge to the GCGCD's denial of plaintiffs' ten applications, and each cite Texas law, whether Texas cases, the Texas Water Code and/or GCGCD rule(s). More specifically, plaintiffs' third cause of action, captioned in part "uncompensated taking" in violation of the Fifth Amendment to the United States Constitution and Article I, Section 17 of the Texas Constitution, includes contentions that: GCGCD did not correctly apply the "rule of capture" recognized by Texas State courts;[74] GCGCD "sought to force Plaintiffs to relinquish the statutory rights established by Texas Government Code § 245.002;"[75] and GCGCD's denial of the ten applications constitute an impermissible regulatory taking, an impermissible taking without just compensation, and an impermissible taking of plaintiffs' private property for private use.[76] Plaintiffs' fourth cause of action, captioned in part "equal protection" in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section III of the Texas Constitution, includes contentions that: GCGCD has allowed Springs Hill Water Supply Corporation to produce for municipal use more groundwater per surface acre of land than is authorized by GCGCD rule 5.4(a) and indicated an intent to exempt Springs Hill from any production limitation from the Carrizo Aquifer, but classified plaintiffs' ten applications "into an identifiable group of out of district permit applications in contravention to Texas Water Code § 36.122(c)" all in violation of federal and state rights to equal protection under the law.[77] Plaintiffs' fifth cause of action, captioned in part "substantive due process" in violation of the Fourteenth Amendment to the United States Constitution, includes contentions that: GCGCD's decision to promulgate new rules, apply the new rules to plaintiffs' ten applications and in a discriminatory fashion, was action beyond the scope of powers delegated to GCGCD by the Texas Legislature, arbitrary and capricious, and not rationally related to any legitimate governmental purpose; and GCGCD's decision to deny plaintiffs' ten applications denied plaintiffs' "rights ... established through Texas law, including the 'right of capture' of percolating groundwater, the right to contract for legal purposes, and the rights created by Texas Government Code § 245.002."[78] Plaintiffs' sixth cause of action, premised on section 1983, alleges violations of the individual plaintiffs' previously alleged Fifth and Fourteenth Amendment federal constitutional rights under color of state law "under the auspices of Chapter 36 of

72. Docket no. 1 at 14–17.

73. *Id.* at 17–18.

74. *Id.* at 19.

75. *Id.* at 20 n. 26.

76. *Id.* at 21–22.

77. *Id.* at 23–25. Plaintiffs also allege that "[n]ot coincidentally, the General manager of Springs Hill is also the Chairman of the Board of Directors of GCGCD...." *Id.* at 24.

78. *Id.* at 26.

the Texas Water Code" with respect to the denial of the ten applications.[79]

Although federal constitutional and statutory rights are implicated in four of the six causes of actions applicable to plaintiff's second set of nine applications (and each of the causes of action applicable to plaintiffs' first application), it is clear that the center of the dispute is the decision of GCGCD to impose limitations on ground water pumping, notwithstanding the "rule of capture" allegedly applicable under State law, and to disapprove plaintiffs' applications, in part pursuant to a GCGCD rule amended at the time the applications were pending. Decisions on the issuance of water pumping permits are uniquely local determinations in the first instance. Yet, plaintiffs have elected to file this action, presenting federal and state claims, rather than filing in State court in Guadalupe County, a court specified in state law for obtaining the expedited judicial review of GCGCD's actions.

 With respect to the third and fourth factors, certainly groundwater regulation is a matter in which the State has a significant interest in maintaining a "coherent policy." Nonetheless, "[t]he mere existence of ... [an administrative] ... infrastructure, however, does not bring the case within *Burford*."[80] "While *Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."[81] But, plaintiffs' claims in this case, at bottom, are claims that "a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors."[82] The State has a significant interest in insuring that state law is correctly and uniformly applied.[83] Even if the State's adherence to the "rule of capture" is settled, as plaintiffs contend, obviously the Texas Legislature, by providing for groundwater conservation districts, has set the stage for a court case to decide the permissibility of pumping limits. If this federal case proceeds first and addresses the question of whether GCGCD correctly followed State law when denying plaintiffs' applications, there is a " 'serious threat of conflict between the adjudication of the federal claim presented ... and the State's interest' " in establishing groundwater conservation districts.[84] Further, the federal claims each involve an assessment of whether GCGCD correctly applied state law when denying each of plaintiffs' ten applications and, therefore, plaintiffs' federal claims are " 'entangled in a skein of state law that must be untangled before the federal case can proceed.' "[85] Finally, "a federal constitutional issue might be mooted or presented in a different posture

79. *Id.* at 27.

80. *Id.*

81. *NOPSI v. Council of City of New Orleans,* 491 U.S. 350, 362, 109 S.Ct. 2506, 2515, 105 L.Ed.2d 298 (1989) (quoting *Colorado River Water Cons. District,* 424 U.S. at 815–16, 96 S.Ct. at 1245).

82. *Id.* at 362, 109 S.Ct. at 2515 (citation omitted).

83. *See Stewart–Sterling One, LLC v. Tricon Global Restaurants, Inc.,* No. Civ. A. 00–477,

2002 WL 1837844 at *4 (E.D.La., Aug. 9, 2002) (quoting *Quackenbush,* 517 U.S. at 727, 116 S.Ct. at 1726).

84. *Stewart–Sterling One, LLC v. Tricon Global Restaurants, Inc.,* No. Civ. A 00–477, 2002 WL 1837844 at *4 (E.D.La. Aug. 9, 2002) (quoting *Quackenbush,* 517 U.S. at 727, 116 S.Ct. at 1726).

85. 491 U.S. at 361, 109 S.Ct. at 2514 (citation omitted).

by a state court determination of pertinent state law."[86]

In support of its motion to dismiss, GCGCD notes that the Fifth Circuit has applied the *Burford* doctrine to groundwater regulation in *Sierra Club*.[87] In *Sierra Club*, the Fifth Circuit vacated a preliminary injunction which limited the withdrawal of water from the Edwards Aquifer, finding that the Sierra Club had not demonstrated a likelihood of success on the merits "because abstention appears so manifestly warranted under *Burford*."[88] In response, plaintiffs argue that Sierra Club is distinguishable because the sole issue on appeal concerned the propriety of the district court's preliminary injunction, obviously equitable relief, whereas plaintiffs in the instant case also seek monetary damages.[89] Further, BexarMet argues that when the Fifth Circuit applied Burford it relied on two considerations not present in this case, namely the entirely intrastate nature of the Edwards Aquifer and the "unified management and decision making" regarding the Edwards Aquifer, which is "geographically, geologically and hydrologically dissimilar from the Edwards Aquifer in several respects, including size, location, water quality, rate of recharge and relative lack of use by municipal water purveyors."[90]

Although it is true that there is no allegation that GCGCD has "unified management and decision making" authority[91] over the Carrizo or Wilcox Aquifers, as the Edwards Aquifer Authority has authority over the Edwards Aquifer regardless of county lines, and even if it is true, as defendants contend, that portions of the Carrizo and Wilcox Aquifers are not regulated by any groundwater conservation district, the State regulatory scheme allows for counties to form water conservation districts. Merely because the State has established a policy to require counties, in the first instance to make necessary decisions to manage, conserve, preserve, and protect water resources does not mean that the regulation of water resources is not a matter of great State concern or that the "'exercise of federal review of the question in the case and in similar cases would [not] be disruptive of state *efforts to establish* a coherent policy with respect to a matter of substantial public concern.'"[92] There is no reason to reject the Texas Legislature's determination that a supra-county regulatory authority is merited for the large and significant Edwards Aquifer[93] but that a county-based conservation district is appropriate for Guadalupe County.

With respect to the fifth factor, the applicable provisions of the Texas Water

**86.** *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1066, 3 L.Ed.2d 1163 (1959).

**87.** Docket no. 5 at 1.

**88.** 112 F.3d at 793.

**89.** Docket no. 8 at 5–6; docket no. 10 at 4.

**90.** Docket no. 8 at 6 & no. 1.

**91.** *Sierra Club*, 112 F.3d at 794.

**92.** *Id.* at 796 (emphasis in original) (citation omitted).

**93.** *Id.* at 794 ("As the Texas Supreme Court stated in Barshop, '[c]onservation of water has always been a paramount concern in Texas, especially in times, like today, of devastating drought.' It characterized the Edwards Aquifer as 'the primary source of water for residents of the south central part of the state. It is vital to the general economy and welfare of the State of Texas.' The court recognized that '*the State has the responsibility under the Texas Constitution to preserve and conserve water resources for the benefit of all Texans.*'") (notes omitted) (emphasis added).

Code[94] address judicial review "in a court of competent jurisdiction in any county in which the district or any part of the district is located." Unlike the situation addressed in *Burford,* which deferred to the consolidated judicial review of decisions of the Texas Railroad Commission in Travis County, any State court of competent jurisdiction in the county in which the groundwater conservation district is located is proper court for suit. Plaintiffs argue that the decentralization of judicial review mandates against applying *Burford.* But, that the Texas Legislature chose to allow county-based conservation districts to make the decisions on permits, subject to review by a local State court of competent jurisdiction, a regional civil Court of Appeals, and the Texas Supreme Court, would appear to underline the strong State preference for local decisionmaking.

Finally, plaintiffs seek an award of money damages as well as declaratory relief and injunctive relief. In accordance with precedent, this Court lacks the authority to dismiss claims for which monetary relief is sought.[95]

In sum, pursuant to *Burford,* it is recommended that the District Court *grant in part* GCGCD's motion to dismiss and *dismiss without prejudice* all aspects of plaintiffs' complaint which seek discretionary relief—causes of action and one and two which seek review of the administrative decision to deny the second set of nine applications, each of the requests for declaratory relief, the request for any "any further . . . relief . . . in equity" to which plaintiffs may be entitled, and plaintiffs' request for expedited consideration pursuant to the Texas Water Code. As the record does not indicate that plaintiffs have filed a complaint in a State court of competent jurisdiction, the District Court should dismiss the above-noted claims without prejudice. Additionally, plaintiffs' remaining federal constitutional and statutory claims and state constitutional claims for money damages should be *stayed* for a period of sixty days, or such further period as the Court may order, to allow plaintiffs' the opportunity to file a state case including the claims seeking discretionary relief.[96] If, within that time period, a state case is initiated, then this case should be further stayed and administratively closed, pending the resolution in State court of the state claims, as the State court's determination as to the appropriateness of GCGCD's actions is relevant to the federal claims, may moot the federal constitutional claims, the section 1983 claim, and the request for declaratory relief. On the other hand, if, within that time period, plaintiffs do not commence an action in State court, then the prosecution of plaintiffs' remaining claims for damages should proceed in this Court. At the appropriate time—when ordering a further stay, when lifting the stay in this Court, or at such other time as the parties may suggest—the Court can address whether the Court

---

94. VERNON'S TEX.CODE ANN., Water Code, § 36.251 (Supp.2004). *See also id.,* § 36.252 (suit to be expedited).

95. *See e.g., Quackenbush,* 517 U.S. at 731, 116 S.Ct. at 1728. *See* note 62, above.

96. In *Webb,* the Fifth Circuit observed that "a court could stay an action pending resolution in state court of an issue relevant to the federal case if the *Burford* doctrine called for abstention." 174 F.3d at 701 n. 5; *see also*

*id.* at 703 n. 12 (*"Webb* also resourcefully quotes a decision interpreting *Quackenbush* to mean 'that abstention, under Burford or otherwise, may be appropriate in suits for damages.' *See DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir.1997). Although true, this lends no support to Webb's position. The court further explained that a 'district court may only order a stay pending resolution of state proceedings; it cannot invoke abstention to dismiss the suit altogether.' *Id.*").

should decline to exercise supplemental jurisdiction over plaintiff's remaining state claims for damages.

### B. *Ripeness of Plaintiffs' "Taking" Claim*

#### Summary of Arguments

GCGCD has moved to dismiss plaintiffs' third cause of action which alleges a violation of the just compensation requirement of the Fifth Amendment to the United States Constitution and Article I, section 17 of the Texas Constitution based on an allegedly uncompensated taking that occurred when plaintiffs' ten applications were denied.[97] GCGCD argues that plaintiffs' claim is not ripe because plaintiffs have not alleged that Texas' inverse condemnation procedure is not plaintiffs or is inadequate.[98] GCGCD urges that until such a time as plaintiffs have exhausted Texas' inverse condemnation procedure, plaintiffs' claim for uncompensated taking is premature and should be dismissed for failure to state a claim upon which relief may be granted.[99] In response, the individual plaintiffs argue that their taking claim is ripe because Texas law does not provide an adequate procedure for seeking compensation.[100] Plaintiffs contend: Texas law prohibits condemnation of ground-

water by a groundwater conservation district; the ripeness doctrine does not apply to a taking for private use; and the ripeness doctrine does not apply to a facial taking claim asserting that a regulation fails to substantially advance a legitimate state interest.[101]

#### Analysis

■■■■ For a property owner to state a claim for a regulatory taking claim against a state entity, a plaintiff must demonstrate, first, that he has received a final decision regarding the application of the challenged regulations to the property at issue from the government entity charged with implementing the regulations, and second that he has availed himself of available and adequate procedures to obtain compensation and has been denied just compensation.[102] The individual plaintiffs argue that there is no available and adequate remedy under Texas law for plaintiff's taking claim because State law prohibits a groundwater conservation district from using eminent domain[103] to condemn land to obtain rights to produce, sell or distribute groundwater.[104] GCGCD has not filed a reply to contest plaintiffs' reading of state law. Because state law does not provide for condemnation of groundwater, it is futile to require plaintiffs to seek

---

**97.** Docket no. 5 at 3.

**98.** *Id.*

**99.** *Id.*

**100.** Docket no. 10 at 5. BexarMet's response does not address this ground for dismissal. See docket no. 8.

**101.** Docket no. 10 at 6–8.

**102.** *Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725, 733–34, 117 S.Ct. 1659, 1664, 137 L.Ed.2d 980 (1997) (citing *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)).

**103.** *Exxonmobil Pipeline Company v. Bell,* 84 S.W.3d 800 (Tex.App.-Houston 2002, pet. granted).

**104.** Section 36.105 of the Water Code provides in relevant part:

> (b) The power of eminent domain authorized in this section may not be used for the condemnation of land for the purpose of:
> (1) acquiring rights to groundwater, surface water or water rights; or
> (2) production, sale, or distribution of groundwater or surface water.

VERNON'S TEX.CODE ANN., Water Code, § 36.015(b) (Supp.2004).

just compensation through an "inverse condemnation" proceeding regarding the denial of their groundwater permit applications and plaintiffs' taking claim is ripe, to the extent the ripeness doctrine even applies to plaintiffs' taking claim. Further, plaintiffs' federal and state constitutional claim for damages for uncompensated taking includes a challenge to the authority of GCGCD to deny the permits, not merely a request for compensation.

In sum, the portion of GCGCD's motion to dismiss that seeks dismissal of plaintiffs' third cause of action for uncompensated taking on the ground the claim is not ripe should be *denied.*

## C. *Equal Protection*

### Summary of Arguments

GCGCD has moved to dismiss plaintiffs' fourth cause of action which alleges a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section III of the Texas Constitution based on the allegedly disparate treatment of plaintiffs' ten applications compared to Springs Hill Water Supply Corporation's production and sale of Carrizo Aquifer groundwater from within GCGCD's boundaries without an application, a permit, or a pumping limitation. GCGCD argues that because plaintiffs have failed to allege "that they have been treated differently based on race or some other invidious class-based distinction,"[105] their equal protection challenge is measured under a "rational basis" test. Because State law authorizes a groundwater conservation district to grant exemptions from permit requirements and

BexarMet and the Springs Hill Water Supply Corporation "are not similarly situated organizations, either in terms of service areas of in the amounts of groundwater that each planned to extract or have extracted within the boundaries of GCGDC," there is a rational basis for any differences in treatment.[106] In response, plaintiffs' oppose dismissal arguing, in essence, that plaintiffs have stated an equal protection claim such that a motion to dismiss for failure to state a claim must be rejected.[107]

### Analysis

 As discussed in Section V above, the well-pleaded allegations of plaintiffs' complaint are accepted as true and construed in plaintiffs' favor when considering a motion to dismiss for failure to state a claim. Plaintiffs have alleged that the individual plaintiffs are similarly situated to the Tiemann landowners in that both Guadalupe County landowners have agreed contractually to convey certain groundwater rights to municipal water purveyors, yet GCGCD classified plaintiffs' applications as out-of-district applications and denied them, but, allegedly, have allowed Springs Hill Water Supply Co. to withdraw groundwater and in amounts greater than the per surface area of land limitations in GCGCD rule 5.4(a), without being "required to participate in the application procedure, pay the application fees or make the evidentiary showings that GCGCD required of Plaintiffs."[108] GCGCD's arguments in support of dismissal, such as its contention there because the law allows GCGCD to grant exemptions from the permit requirements there is a rational basis for the difference

---

105. Docket no. 5 at 3–4.

106. *Id.*

107. Docket no. 8 at 7–9; docket no. 10 at 10–12.

108. Docket no. 1 at 23. Plaintiffs also allege that the General Manager of Springs Hill Water Co. is the Chairman of the Board of Directors of GCGCD. *Id.* at 24.

in treatment, will require an assessment of the evidence in support of plaintiffs' equal protection claim. An evaluation of the facts and evidence will be required to determine if a rational basis exists for the differences in treatment and whether any disparate treatment is related to a legitimate governmental purpose. In determining that plaintiffs' fourth cause of action states a claim for relief, the Court, of course, expresses no opinion on whether the evidence will support entry of judgment on the merits for plaintiffs.

In sum, the portion of GCGCD's motion to dismiss that seeks dismissal of plaintiffs' fourth cause of action alleging a denial of equal protection should be *denied.*

### D. *Substantive Due Process*

**Summary of Arguments**

GCGCD has moved to dismiss plaintiffs' fifth cause of action which alleges a violation of substantive due process in violation of the Fourteenth Amendment to the United States Constitution. In brief, GCGCD argues that "placing reasonable limits on the extraction of groundwater" demonstrates the "rational basis" for GCGCD's actions in denying plaintiffs' permits.[109] Plaintiffs oppose dismissal, arguing, in sum, that they have stated a claim for relief, most particularly based on GCGCD's allegedly "irrational" action to deny plaintiffs' applications to withdraw any groundwater whatsoever, rather than, for example, merely limiting the groundwater withdrawal to the limits imposed by GCGCD rule 5.4(a) in effect at the time of the filing of plaintiffs' first application.[110]

**Analysis**

■■■ As discussed in Section V above, the well-pleaded allegations of plaintiffs'

complaint are accepted as true and construed in plaintiffs' favor when considering a motion to dismiss for failure to state a claim. After careful review of plaintiffs' fifth cause of action and the applicable case law, the Court cannot conclude that plaintiffs' have not stated a claim for relief. Again, the Court expresses no opinion on whether plaintiffs will prevail, but does determine that plaintiffs' have stated a claim. Among other things, plaintiffs have alleged that GCGCD's treatment of plaintiffs' applications cannot be justified on the important interest of groundwater conservation because GCGCD denied plaintiffs the right to withdraw any groundwater in any amount, an action that amounts to "absolute preservation" of groundwater, in contravention of state procedure which allows for applications to be issued and plaintiffs' "right of capture" of percolating groundwater, right to contract, and rights created by Texas Government Code section 245.002.[111] Plaintiffs deny they seek, or ever sought, permission to extract groundwater in excess of the limitations imposed by GCGCD rules.[112] Whether, on the facts, there is a legitimate state interest and/or rational basis for GCGCD's rules will be determined at a later time, but plaintiffs' have sufficiently alleged a claim for relief.

In sum, the portion of GCGCD's motion to dismiss that seeks dismissal of plaintiffs' fifth cause of action alleging a denial of federal substantive due process should be *denied.*

### E. *Section 1983*

**Summary of Arguments**

GCGCD has moved to dismiss plaintiffs' sixth cause of action which alleges a viola-

---

**109.** Docket no. 5 at 4–6.

**110.** Docket no. 8 at 9–10; docket no. 10 at 12–14.

**111.** Docket no. 1 at 26.

**112.** Docket no. 8 at 10.

tion of section 1983. In brief, GCGCD argues that because plaintiff has failed to state a claim for relief based on a violation of plaintiffs' federal constitutional rights, resultantly, they have failed to state a section 1983 cause of action because the only claims that remain arise under state law which do not support a section 1983 claim.[113] The individual plaintiffs oppose dismissal, arguing that the have alleged a violation of federal rights committed by a person acting under color of state law and, accordingly, have stated a section 1983 claim.[114]

### Analysis

 The same reasons that support the recommendation that defendant's motion to dismiss plaintiffs's third, fourth, and fifth causes of action should be denied, support the determination that plaintiffs' have stated a claim for relief pursuant to section 1983. Because plaintiff's have stated a claim for violations of their federal constitutional rights, and because GCGCD does not argue that plaintiff's cannot prove "state action" as a matter of law, plaintiffs' have also stated a claim for relief pursuant to section 1983.

In sum, the portion of GCGCD's motion to dismiss that seeks dismissal of plaintiffs' sixth cause of action alleging a section 1983 cause of action should be *denied.*

### F. *Declaratory Relief and Supplemental Jurisdiction Over Plaintiffs' State Law Claims*

### Summary of Arguments

GCGCD has moved to dismiss plaintiffs' request for declaratory relief and each of plaintiffs' state law claims, arguing, in sum, that because each of plaintiffs' alleged federal claims should be dismissed, there is no subject matter jurisdiction to issue a declaratory judgment and the Court should decline to exercise supplemental jurisdiction to resolve remaining state law claims, without prejudice to plaintiff pursuing such claims in state court.[115] In response, BexarMet argues that because dismissal of plaintiffs' federal claims would be inappropriate, the Court cannot deny plaintiffs' request for declaratory relief and should exercise supplemental jurisdiction over plaintiffs' state law claims especially because "Plaintiffs' claims arise from denial of federal rights by way of an abuse of state-conferred authority."[116]

### Analysis

GCGCD states no reason to dismiss plaintiffs' request for issuance of a declaratory judgment other than the argument that each of plaintiffs' federal substantive claims should be dismissed such that there is no federal subject matter jurisdiction to issue declaratory relief. The same reasons that support the recommendation that defendant's motion to dismiss plaintiffs's third, fourth, and fifth causes of action should be denied, support the determination that plaintiffs' request for declaratory relief should not be dismissed at this time.

With respect to the exercise of supplemental jurisdiction over plaintiffs' state law claims, as discussed in connection with the recommendation of a partial dismissal and partial stay of this action based on *Burford* abstention, at the time of ordering any further stay in the disposition of the

---

113. Docket no. 5 at 6.

114. Docket no. 10 at 15.

115. Docket no. 5 at 6–8.

116. Docket no. 8 at 10.

remaining claims for damages or lifting the limited stay, the parties can brief and the Court can address whether the District Court should decline to exercise supplemental jurisdiction over plaintiffs' state claims. The federal statute providing for supplemental jurisdiction acknowledges that a district court may decline to exercise supplemental jurisdiction over state claims if, among other grounds, a state claim raises a novel or complex issue of state law, or if the state claims substantially predominate over the federal claims, or if, in exceptional circumstances, there are other compelling reasons for declining federal jurisdiction.[117] Although GCGCD does argue that state law issues predominate over the federal issues and that the state issues involve groundwater regulation issues in which "[f]ederal courts have consistently been reluctant to become involved,"[118] the final determination on whether the District Court should exercise supplemental jurisdiction over the state law claims might be better determined after the District Judge has entered its final ruling on the matters addressed in this report (following time for objections from the parties) and after plaintiffs have determined whether they elect to file a state case and whether they elect to include voluntarily the state claims that may remain in this suit.

In sum, the portion of GCGCD's motion to dismiss that seeks dismissal of plaintiffs' request for issuance of a federal declaratory judgment and plaintiff's pendant state law claims should be *denied at this time.*

## VII. *RECOMMENDATION*

Based on the foregoing analysis, it is recommended that defendant GCGCD's motion to dismiss[119] should be **GRANTED in part and DENIED in part.**

## VIII. *INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL*

 The United States District Clerk shall serve a copy of this Report and Recommendation on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if authorization to do so is on file with the Clerk. According to 28 U.S.C. § 636(b)(1) and FED.R.CIV.P. 72(b), any party who desires to object to this report must serve and file written objections to the Report and Recommendation within 10 days after being served with a copy unless this time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[120] Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to pro-

---

117. 28 U.S.C. § 1356(c)(1), (2), and (4).

118. Docket no. 5 at 7.

119. Docket no. 5.

120. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

posed factual findings and legal conclusions accepted by the District Court.[121]

March 18, 2004.

---

**121.** *Acuna v. Brown & Root Inc.,* 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United* *Serv. Auto. Ass'n,* 79 F.3d 1415, 1428 (1996).